1  Nossaman LLP
   Allan H. Ickowitz (SBN 80994)
2  Thomas D. Long (SBN 105987)
   John W. Kim (SBN 216251)
3  445 S. Figueroa Street, 31st Floor
   Los Angeles, California 90071
4  Telephone: 213.612.7800
   Facsimile: 213.612.7801
5  aickowitz@nossaman.com
   tlong@nossaman.com
6  jkim@nossaman.com
7
   Attorneys for Proposed Intervenor,
8  The Federal Deposit Insurance Corporation, in
   its capacity as Receiver of IndyMac Bank, F.S.B.
9

10

11              UNITED STATES BANKRUPTCY COURT

12              CENTRAL DISTRICT OF CALIFORNIA

13                 LOS ANGELES DIVISION

14

15  In re:                              Case No: 2:08-21752-BB

16  INDYMAC BANCORP, INC.,              Chapter 7

17          Debtor.

18  ALFRED H. SIEGEL, solely as Chapter 7    Adversary Proc. No. 09-2645-BB
    Trustee of the Estate of IndyMac Bancorp,
19  Inc.,                                    **NOTICE OF MOTION AND MOTION OF THE
                                             FEDERAL DEPOSIT INSURANCE
20          Plaintiff,                       CORPORATION, AS RECEIVER OF INDYMAC
                                             BANK, F.S.B., TO INTERVENE IN
21      v.                                   ADVERSARY PROCEEDING AND TO STAY
                                             PROCEEDING**
22  LOUIS E. CALDERA; LYLE E. GRAMLEY;
    HUGH M. GRANT; PATRICK C. HADEN;         [Appendix 1 and Complaint in Intervention
23  TERRANCE G. HODEL; ROBERT L. HUNT        Concurrently Submitted Hereto]
    II; LYDIA H. KENNARD; BRUCE G.
24  WILLISON; AND MICHAEL W. PERRY,          **[FRBP 7024; FRCP 24]**

25          Defendants.                      **COURT APPROVED SCHEDULED HEARING:**
                                             **DATE:      February 4, 2010**
26                                           **TIME:      10:00 a.m.**
                                             **PLACE:     Courtroom 1475**
27                                           **            255 East Temple Street**
                                             **            Los Angeles, CA 90012**
28

381062_1.DOC

FDIC'S NOTICE OF MOTION AND MOTION TO INTERVENE

1

## TABLE OF CONTENTS

2

I.     INTRODUCTION. .................................................................................................1

3

II.    STATEMENT OF FACTS. ....................................................................................2

4

III.   LEGAL ARGUMENT..........................................................................................6

5

    A.    The FDIC-R May Intervene As A Matter Of Right...................................6

6

        1.    The FDIC-R's Motion To Intervene Is Timely................................7

7

        2.    The FDIC-R Has Asserted An Interest Relating To The Property Or
Transaction Which Is The Subject Of This Action in the Form of D&O

8

            Policies and the Bank's Derivative Claims.................................8

9

        3.    The FDIC-R will Suffer Practical Impairment of its Ability to Protect its

10

            Interest should it not be Permitted to Intervene. ...........................16

11

        4.    The FDIC-R's Interests Are Not Adequately Protected by the Trustee or the
Former Directors and Officers of Bancorp and Bank.  In fact, the FDIC-R's

12

            Interests May be Directly Adverse with the Existing Parties. ....................17

13

    B.    If Intervention As of Right Is Not Granted, Alternatively, Permissive Intervention
Should Be Granted Because The FDIC-R's Potential Claim And The Trustee's

14

       Complaint Share Common Questions Of Law And Fact......................................18

15

    C.    The Court Should Stay This Adversary Proceeding Pending A Ruling On The
FDIC-R'S Motion to Intervene And/Or Other Dispositive Motions. ...............................19

16

IV.   RESERVATION OF RIGHTS. ...........................................................................19

17

V.    CONCLUSION...................................................................................................20

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Cases**

*Atherton v. Federal Deposit Insurance Corporation*
519 U.S. 213 (1997)........................................................................... 10

*Brandt v. Bassett (In re: Southeast Banking Corp.)*
827 F.Supp. 742 (S.D. Fla. 1993) ........................................ 10, 11, 13

*Bureerong v. Uvawas*
167 F.R.D. 83 (C.D. Cal. 1996)................................................... 18

*County of Fresno v. Andrus*
622 F.2d 436 (9th Cir. 1980) ......................................................... 8

*Educational Credit Mgmt. Corp. v. Bernal (In re Bernal)*
223 B.R. 542 (B.A.P. 9th Cir. Cal. 1998) ................................... 7

*FDIC v. Am. Cas. Co.*
998 F.2d 404 (7th Cir. 1993) ...................................................... 10

*Forest Conservation Council v. U.S. Forest Serv.*
66 F.3d 1489 (9th Cir. 1995) ................................................... 7, 17

*Grosset v. Wenaas*
42 Cal. 4th 1100 (2008) ............................................................... 11

*In re Benny*
791 F.2d 712 (9th Cir. Cal. 1986) ................................................ 7

*In re Sunrise Securities Litigation*
916 F.2d 874 (3rd Cir. 1990) ...................................................... 10

*Lubin v. Skow (In re Integrity Bancshares, Inc.)*
(N.D.Ga., Nov. 30, 2009) 2009 U.S.Dist.................................. 12, 13, 15

*Pareto v. FDIC*
139 F.3d 696 (9th Cir. 1998) .................................... 10, 11, 15, 16

*Ray v. Constant (In re Constant)*
(9th Cir. Cal. Sept. 12, 1994) ....................................................... 7

*Renfro v. FDIC*
773 F.2d 657 (5th Cir. 1985) ...................................................... 10

*Richardson vs. Reliance National Indemnity*
(N.D.Cal., March 9, 2000, No. C99-2952 CRB) ......................... 2

*U.S. ex rel. McGough v. Covington Technologies*
967 F.2d 1391 (9th Cir. 1992) ...................................................... 7

*U.S. v. City of Los Angeles*
288 F.3d 391 (9th Cir. 2002) ................................................... 8, 17

*United States ex rel. Killingsworth v. Northrop Corp.*
25 F.3d 715 (9th Cir. 1994) .......................................................... 7

**Statutes**

11 U.S.C. § 101 ........................................................................................................ 2
11 U.S.C. § 1109(b) ................................................................................................ 2
12 CFR § 7.2000 .................................................................................................... 10
12 U.S.C. § 1821(c) ................................................................................................ 2
12 U.S.C. § 1821(d)(2)(A) ...................................................................................... 11
12 U.S.C. § 1821(d)(2)(A)(i) .......................................................................... 2, 6, 10
Cal. Corp. Code § 800 ............................................................................................ 11
Cal. Corp. Code § 800(b)(1) .................................................................................. 11

**Other Authorities**

61 Fed. Reg. 4866 (1996) ...................................................................................... 10
74 Fed. Reg. 59,540 (November 18, 2009) .............................................................. 2

**Rules**

Fed. R. Civ. Proc. 24(b)(3) ...................................................................................... 18
Federal Rules of Bankruptcy Procedure 24(a)(2) .................................................... 6
Federal Rules of Bankruptcy Procedure Rule 24(a)(2) .................................. 6, 7, 18
Federal Rules of Bankruptcy Procedure Rule 24(b) ................................................ 18
Federal Rules of Bankruptcy Procedure Rule 24(b)(1)(B) ...................................... 18
Federal Rules of Bankruptcy Procedure Rule 26(a)(1) .............................................. 7
Federal Rules of Bankruptcy Procedure Rule 7024 .................................................. 6
Federal Rules of Bankruptcy Procedure Rule 7026 .................................................. 7

1     **TO THE HONORABLE SHERI BLUEBOND, UNITED STATES BANKRUPTCY**

2     **JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL PARTIES**

3     **ENTITLED TO NOTICE HEREIN AND THEIR ATTORNEYS OF RECORD:**

4     **PLEASE TAKE NOTICE** that on February 4, 2010, at 10:00 a.m. or as soon thereafter as

5     counsel may be heard, before the Honorable Sheri Bluebond, United States Bankruptcy Judge, in the

6     above-captioned chapter 7 case of IndyMac Bancorp, Inc. (the "***Debtor***" or "***Bancorp***" or "***Holding***

7     ***Company***"), the Federal Deposit Insurance Corporation in its capacity as Receiver of IndyMac Bank,

8     F.S.B. (the "***FDIC-R***") will and hereby does move this Court to allow it to intervene in this adversary

9     proceeding as a plaintiff party pursuant Rule 24(a)(2), or alternatively Rule 24(b)(1)(B), of the Federal

10     Rules of Civil Procedure ("***FRCP***"), which are made applicable without modification by virtue of Rule

11     7024 of the Federal Rules of Bankruptcy Procedure (the "***Motion***"). The FDIC-R seeks to intervene in

12     order to submit the Complaint in Intervention attached hereto as **Exhibit "1"**.

13     This Motion is made on the grounds that the FDIC-R is entitled to intervene as of right pursuant

14     to FRCP 24(a)(2) because (1) its motion to intervene is timely, (2) it has an interest relating to the

15     property and transaction that is the subject of this action, (3) it is so situated that disposing of this action

16     may, as a practical matter impair or impede its ability to protect its interests, and (4) its interests are not

17     adequately represented by the existing parties.

18     Alternatively, this Motion is made on the grounds that the FDIC-R is entitled to permissive

19     intervention pursuant to FRCP 24(b)(1)(B) because (1) its motion to intervene is timely, (2) the claims

20     the FDIC-R seeks to assert have questions of law or fact in common with the present issue, and (3) its

21     interests are not adequately represented by the existing parties.

22     This Motion is based on this Notice of Motion and Motion, the supporting Memorandum of

23     Points and Authorities, all pleadings, records and papers filed in this action, such matters as the Court

24     may and hereby respectfully is requested to judicially notice, and such further evidence as may be

25     presented at or before the hearing of this Motion.

26     //

27     //

28

1    **PLEASE TAKE FURTHER NOTICE** that any objection to the relief requested in the Motion

2    and all evidence in support thereof must: (i) comply with the Local Bankruptcy Rules for the Central

3    District of California governing such papers, (ii) be filed no later than fourteen (14) days prior to the

4    Hearing Date, and (iii) be served on all parties entitled to notice.

5

6    Dated:  January 13, 2010                NOSSAMAN LLP
                                             Allan H. Ickowitz
7                                            Thomas D. Long
                                             John W. Kim
8

9

10                                   By: _____
                                             JOHN W. KIM
11                                   Attorneys for Proposed Intervenor,
                                     The Federal Deposit Insurance Corporation, in its capacity as
12                                   Receiver of IndyMac Bank, F.S.B.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION.

The FDIC-R is entitled to intervene in this action to protect legal claims that belong to it and not to the Trustee (as defined below). The Debtor was the holding company of IndyMac Bank, F.S.B. (**"Bank"**). The Bank failed and on July 11, 2008, the Federal Deposit Insurance Corporation (**"FDIC"**) was appointed the receiver for the Bank. Thereafter, the FDIC-R commenced an investigation as to whether directors and officers of the Bank breached their duties of care to the Bank and are, therefore, as a result of the mismanagement of the Bank responsible for substantial damages to the Bank. That investigation is on-going involving the review of hundreds of thousands of pages of documents and a large number of investigative depositions. As of September 30, 2009, the FDIC-R estimates that the failure of the Bank will cost the Deposit Insurance Fund approximately $11.5 billion.

A principal source of recovery to address any losses which the Bank's directors and officers may have caused, in addition to their personal assets, will be the proceeds available under certain directors and officers' liability policies which are applicable directors and officers of both the Bank and the Debtor. Indeed, each of the nine individual defendants named by the Trustee in his complaint was a director (or officer) of both Debtor and the Bank at all relevant times.

In an overreaching effort to maximize his recovery out of those limited insurance proceeds, the Trustee has improperly alleged claims that belong to the FDIC-R. The Trustee's claims directly involve the alleged mismanagement of the Bank and assert losses caused by the Bank's mismanagement. But for the mismanagement of the Bank and the Bank's ultimate failure, Bancorp could claim no injury and the Trustee would not even have conceived of his purported claims.

This court need not resolve on this Motion what claims belong to the FDIC-R, on the one hand versus the Debtor, on the other hand. The court should, however, grant this Motion so that these overlapping issues may be joined and resolved with judicial efficiency. As a result, the FDIC-R requests that this court order that (a) the FDIC-R may intervene in this proceeding, (b) that the FDIC-R's Complaint in Intervention be accepted and filed and (c) this adversary proceeding be stayed pending a ruling on this Motion or as otherwise appropriate.

## II.    STATEMENT OF FACTS.

1.     At all relevant times prior to July 11, 2008, the Bank was an indirect banking subsidiary[1] of the Debtor. On July 11, 2008, the Office of Thrift Supervision (the "**OTS**") closed the Bank and appointed the FDIC as Receiver for IndyMac Bank. The FDIC is authorized to accept appointment as a Receiver for any insured depository institution. 12 U.S.C. § 1821(c). It is undisputed that the FDIC, as the Bank's Receiver, succeeded to "all rights, titles, powers and privileges of the insured depository institution, and of any stockholder, member, accountholder, depositor, officer, or director of such" Bank (emphasis added, 12 U.S.C. § 1821(d)(2)(A)(i)). Accordingly, the FDIC-R acquired all rights, titles, powers and privileges of the Bank *and* the Bank's stockholders with respect to the institution and its assets, including, but not limited to, any claims for damages or injury to the Bank due to negligence, mismanagement, breaches of fiduciary duties, breaches of contracts and corporate waste.

2.     On July 31, 2008, Bancorp filed a petition for relief under Chapter 7 of the Bankruptcy Code, 11 U.S.C. §§ 101, *et. seq.,* (the "**Bankruptcy Case**") in the United States Bankruptcy Court for the Central District of California, Los Angeles Division (the "**Bankruptcy Court**"). The FDIC as Receiver of Bank filed a proof of claim in the Debtor's Bankruptcy Case on November 26, 2008. The FDIC-R is a "party in interest" which "may raise and may appear and be heard on any issue" in this Bankruptcy Case. 11 U.S.C. § 1109(b).

3.     On November 12, 2009, the Board of Directors of the FDIC formally determined that the assets of IndyMac Bank were insufficient to make any distribution on claims of general unsecured creditors of the Bank's receivership and therefore such claims have no value. On November 18, 2009, the FDIC published a notice of the "no value" determination in the Federal Register. *See* 74 Fed. Reg. 59,540 (November 18, 2009).

4.     One day later, on November 13, 2009, Plaintiff Alfred H. Siegel, as Chapter 7 Trustee for the estate of the Debtor herein ("**Trustee**") filed this adversary proceeding against nine former directors

---

[1] /    The Debtor is the sole owner of IndyMac Intermediate Holdings, Inc., which in turn is the sole stockholder of the Bank. (Complaint at 1, ¶ 1). IndyMac Intermediate Holding, Inc. was an intermediary between the Debtor and Bank which intermediary's only purpose was to hold 100% of the Bank's shares. The fact that IndyMac Intermediate Holdings, Inc. exists between Bancorp and Bank is irrelevant to the instant analysis. (*Richardson vs. Reliance National Indemnity* (N.D.Cal., March 9, 2000, No. C99-2952 CRB) 2000 U.S. Dist. Lexis 2838.)

and officers of Bancorp (the **"Defendants"**) seeking, among other things, actual and punitive money damages for alleged injury caused by breaches of duties of care, loyalty and corporate waste (the **"Complaint"**). Although not specifically noted in the Complaint, all of the Defendants served as directors and/or officers of both Bancorp and Bank at all relevant times. One defendant, Michael E. Perry, served as a director and officer of the Debtor and Bank at all relevant times. The eight other defendants served as directors of both Debtor and Bank (but not as officers of either entity).[2] (IndyMac Bancorp Inc., Definitive Proxy Solicitation Material – Schedule 14A, pages 13 – 16 (filed on 3/24'2008, available at http://sec.gov/Archives/edgar/data/773468/000095013408005221/v38985def14a.htm.)

5.      The Trustee states he has "standing to object to the [proof of] claims that the Defendants have filed in the Bankruptcy Case and to bring the claims alleged herein. [This is because] Bancorp's estate suffered significant and direct injuries, which are described herein." (Complaint at 7, ¶ 16).

6.      In summary, the Trustee asserts claims against the Defendants for (a) failing to raise capital for the benefit of the Bank; (b) downstreaming money to benefit the Bank and participating with the Bank in a 2008 backdating of certain capital infusions into the Bank; (c) failing to supervise Bank management; and (d) failing to take proper actions on behalf of Bancorp and Bank in light of "financial red flags." (Complaint at 5-6, ¶ 9).

7.      The essence of the Trustee allegations is based on the loss of Bancorp's investment as a Bank shareholder because the negligence and mismanagement of the banking operations caused the Bank to fail. Despite the artful characterizations in the Complaint, a detailed review of that Complaint reveals that the Trustee is asserting claims relating to the Bank's mismanagement. That is because no management for the IndyMac business enterprise existed at the Holding Company's level, i.e., the Debtor. For example, many of the IndyMac internal policies such as the "Risk-Based Capital Ratios" that were allegedly breached by Defendants were *Bank* policies, not those of Bancorp. (Complaint at 16, ¶ 59; at 17, ¶ 63). Nonetheless, the Complaint cloaks at least some of the allegations as direct complaints against Bancorp's "senior management." (Complaint at 16, ¶ 59). Other allegations are

---

[2] /     From at least 2004 until the closure of the Bank on July 11, 2008, the Bank employed at least three or more directors who served on the Bank's board but who did not serve on Bancorp's board (Gabrielle E. Green, since 2007; Stuart A. Gabriel, since 2004; and Richard H. Wohl, since 2005). On the other hand, all Bancorp directors (and officers) also served as directors or were officers of the Bank.

1  directed to the officers and directors of Bank, or ambiguously pled against officers and directors of *both*

2  Bank and Bancorp as set forth in Appendix 1. The FDIC-R attaches and incorporates **Appendix 1**

3  which references more than 35 of the Trustee's allegations as errors or omissions caused (or injuries

4  suffered) at the Bank level or by the "Company's" (as defined below).

5         8.    The Complaint states that "banking operations" were conducted at the Bank level.

6  (Complaint at 2, ¶ 2). Bancorp did not conduct banking operations independent of the Bank since it was

7  merely the holding company. Specifically, all business operations for the collective IndyMac enterprise

8  were conducted solely at the Bank's level as it related to IndyMac's mortgage banking including, but not

9  limited to, originating, selling, servicing and purchasing securitized pools of many non-traditional loans.

10  (Complaint at 2, ¶ 2; Complaint at 10, ¶ 36).

11         9.    The Complaint is replete with allegations of injuries caused by one or more Defendants to

12  the Bank and/or the "*Company*". The "Company"[3] is defined as both Bancorp <u>and</u> the Bank leading to a

13  blurring of the nature of the Trustee's allegations. (Complaint at 1). Most of the allegations also do not

14  specify whether the Defendants were acting in their capacities as Bancorp directors, Bank directors or

15  both. In fact, a significant number of the allegations relate to actions or omissions committed at the

16  *Bank, not Bancorp's,* management level. Other allegations blatantly interchange "Bancorp" and "Bank"

17  as though they were synonymous.

18         10.    The Complaint liberally inserts the bracketed word of "[Bancorp]" throughout quoted

19  statements in a creative attempt to characterize the Trustee's allegations as relating to Defendants'

20  breaches of duties owed to Bancorp or relating to damages suffered by Bancorp, as opposed to the Bank.

21  By doing so, the Trustee deletes and replaces words that may have been used in the original quotes.

22  (Complaint at 32-33, ¶ 124; at 41, ¶ 153; at 43, ¶ 162; at 44, ¶ 162; and at 58, ¶ 218) (See Appendix 1).

23         11.    Certain allegations in the Trustee's Complaint are inaccurate or contradicted based on the

24  exhibits attached to the Complaint. For example, the Trustee alleges that Defendants ignored "financial

25

26  [3] /    "Company" is defined as both Bancorp and Bank. (Complaint at 1). The ambiguity appears throughout
the Complaint and blurs the distinction between alleged wrongdoings at the levels of Bank, Bancorp or both..

27  Similarly, the term "management" or "senior management" is used throughout the Complaint without labeling
whether the allegations relate to the Bank's management or the Debtor's management which obfuscates the

28  distinctions between Bancorp and Bank. The FDIC notes there are a limited number of exceptions where
allegations are described as being made against "Bancorp's senior management". Complaint at 39, ¶ 142)
(Appendix 1).

1  red flags" throughout 2006 and 2007, which included the "Treasury Report – Office of Inspector

2  General, Dep't of the Treasury, Audit Report, Safety and Soundness: Material Loss Review of IndyMac

3  Bank, F.S.B., OIG-09-032 (Feb. 26, 2009)."  (Exhibit 1 to the Complaint, Complaint at 57, ¶ 218).

4        a.     First, the Trustee alleges that the Treasury Report cites an e-mail from "Perry to

5  **Bancorp executives** regarding concerns about the thrift's subprime portfolio".  (Complaint at 57, ¶

6  218).  In reality, the Treasury Report does not refer to "Bancorp executives."  It simply states that Perry

7  sent the communication to "his executives" and makes it clear that the Treasury Report is referring to

8  the Bank's business, not the Debtor's.  The Treasury Report provides:

9             "This was very surprising to us because in the beginning of 2007 IndyMac's own
           CEO expressed concerns about the thrift's subprime portfolio in an e-mail
10             message **to his executives** that discussed the secondary market disruption. His
           message stated that IndyMac needed to get ahead of the secondary market and
11             trade as much as they could as fast as they could in small deal sizes." (Page 19,
           February 26, 2009 Treasury Report; Emphasis added.)
12

13        b.     Second, the Trustee alleges that "[D]espite the relentlessly negative data quarter

14  after quarter, in discussing preliminary results for the second quarter of 2007, on or about July 10, 2007,

15  Perry indicated that he was 'pleased with [Bancorp's] business model and performance.'"  Complaint at

16  58, ¶ 225).  In fact, Perry did not say that he was pleased with Bancorp's business model.  He said: "I am

17  pleased **with our business model** and performance here and proud of how our team is executing in this

18  very challenging market."  (See Appendix 1.)

19        12.     On December 16, 2009, the Court entered the *"Order Approving Stipulation to Extend*

20  *Time for Filing Responsive, Opposing and Reply Papers"* (the **"Continuance Order"**) [Adversary

21  Proceeding, Docket # 6].  The Order provides that the Defendants' deadline to respond by motion (or

22  otherwise) to the Trustee's Complaint is extended until February 1, 2010.  A hearing on the Defendants'

23  response to the Complaint and a status conference is set for April 20, 2010.

24        13.     On January 11, 2010, the Defendants filed in the District Court a motion to withdraw the

25  reference of this proceeding and any claims related thereto.  The FDIC-R intends to join in that motion

26  and/or file its own motion to withdraw the reference should leave to file this Complaint in Intervention

27  be granted.

28

## III.    LEGAL ARGUMENT.

The FDIC-R files this Motion simply to intervene and to assert its exclusive ownership rights to the claims resulting from any alleged wrongdoings, errors and/or omissions of the management of the Bank and the injuries resulting from the demise of the Bank. Such claims include those arising from Bancorp's investment and capital transfers to the Bank as described in the Complaint. As is evident from the excerpts of the Complaint described above and the numerous allegations in Appendix 1, the Trustee asserts, in substance if not in form: (i) a derivative action on behalf of the Debtor as the indirect shareholder of the Bank; and (ii) other claims that can only be asserted by the FDIC as Receiver of the Bank by way of a direct action against the Bank's former directors and officers including, but not limited to, claims for breaches of fiduciary duties and contract, and for negligence and/or mismanagement of the Bank. The FDIC as Receiver of IndyMac Bank has succeeded by operation of law to each such claim pursuant to 12 U.S.C. § 1821(d)(2)(A)(i).

The FDIC-R should be permitted to intervene in this adversary proceeding "as of right" under of FRCP 24(a)(2). Alternatively, the FDIC-R may permissively intervene in this adversary proceeding pursuant to FRCP 24(b)(1)(B).

### A.    The FDIC-R May Intervene As A Matter Of Right.

Rule 7024 of the Federal Rules of Bankruptcy Procedure provides that "Rule 24 F.R.Civ.P. applies in adversary proceedings." In turn, Rule 24(a)(2) of the FRCP states:

> On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

The Ninth Circuit has adopted a four-part test to resolve applications to intervene under FRCP 24(a)(2). An order granting intervention as of right is appropriate if (1) the applicant's motion is timely; (2) the applicant has asserted an interest relating to the property or transaction which is the subject of the action; (3) the applicant is so situated that without intervention the disposition may, as a practical matter, impair or impede its ability to protect that interest; and (4) the applicant's interest is not adequately represented by the existing parties. *See U.S. ex rel. McGough v. Covington Technologies*, 967 F.2d

1391, 1394 (9th Cir. 1992); *Educational Credit Mgmt. Corp. v. Bernal (In re Bernal)*, 223 B.R. 542, 547

(B.A.P. 9th Cir. Cal. 1998).

Courts should generally construe Rule 24 liberally in favor of potential intervenors. *In re Benny*,

791 F.2d 712, 721 (9th Cir. Cal. 1986) (internal citations omitted); *Forest Conservation Council v. U.S.

Forest Serv.,* 66 F.3d 1489, 1496 n.8 (9th Cir. 1995) ("A liberal policy in favor of intervention served

both efficient resolution of issues and broadened access to the courts.  By allowing parties with a

practical interest in the outcome of a particular case to intervene, we often prevent or simplify future

litigation involving related issue...")

Here, the FDIC-R's motion to intervene as of right should be granted because each of the four

criteria under Rule 24(a)(2) has been satisfied.

**1.    The FDIC-R's Motion To Intervene Is Timely.**

Ninth Circuit courts balance three factors to determine whether a motion to intervene is timely:

(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to the other

parties; and (3) the reason for and length of the delay.  *See United States ex rel. Killingsworth v.

Northrop Corp.*, 25 F.3d 715, 719 (9th Cir. 1994); *Ray v. Constant (In re Constant)* , 1994 U.S. App.

LEXIS 25265 * 2 (9th Cir. Cal. Sept. 12, 1994).

This adversary proceeding is in its infancy.  The Trustee's Complaint was filed on November 13,

2009.  On December 16, 2009, this Court entered the Continuance Order pursuant to which the initial

deadlines in this litigation have been extended.  Specifically, the Continuance Order provides that the

deadlines for Defendants to respond to the Complaint, the Trustee to oppose, and the Defendants to

reply have been set for February 10, March 10 and April 9, 2010, respectively.  Any hearing on the

Defendants' responses to the Complaint is set for April 20, 2010.  No formal discovery has yet

commenced.  Even if some disclosures have taken place, or will take place before the determination of

this Motion, such as initial disclosures under FRCP 26(a)(1) (made applicable herein by Fed. R. Bankr.

Proc. 7026) that discovery is likely limited to certain document exchanges between the existing parties.

The FDIC-R also notes that the Defendants have advised the FDIC-R that they have taken the position

that, given the Continuance Order, any such conference or initial disclosure activity is premature in any

event.

**FDIC'S NOTICE OF MOTION AND MOTION TO INTERVENE**

1  It is clear that there has been no unreasonable delay in the FDIC-R's request for intervention.

2  The FDIC-R has expeditiously moved to intervene in this adversary proceeding to assert and protect its

3  rights in the subject matter of the litigation.  At this preliminary stage in the proceedings, intervention by

4  the FDIC-R will not delay the litigation, nor will it cause prejudice or harm to the legitimate interests of

5  the existing parties.  To the contrary, the FDIC-R's presence at this point in the litigation will ensure that

6  claims of interested parties arising from common legal and factual allegations will be addressed in this

7  adversary proceeding or any subsequent proceedings.

8  **2.    The FDIC-R Has Asserted An Interest Relating To The Property Or Transaction Which Is The Subject Of This Action in the Form of D&O**

9  **Policies and the Bank's Derivative Claims.**

10  An applicant for intervention has a "significant protectable interest" in an action if (1) it

11  asserts an interest that is protected under some law, and (2) there is a "relationship" between its legally

12  protected interest and the plaintiff's claims.  *U.S. v. City of Los Angeles,* 288 F.3d 391, 398 (9th Cir.

13  2002).  "The 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many

14  apparently concerned persons as is compatible with efficiency and due process."  *County of Fresno v.*

15  *Andrus,* 622 F.2d 436, 438 (9th Cir. 1980).  The relationship requirement is met "if the resolution of the

16  plaintiff's claims actually will affect the applicant."  *U.S. v. City of Los Angeles,* 288 F.3d at 398.

17  As fully described below, the FDIC-R asserts a vested interest in the Directors and Officers'

18  Liability Insurance Policies and Proceeds which policies also cover claims against the Defendants

19  named in this adversary action.  Additionally, the Trustee's claims against the Defendants are derivative

20  in nature and belong to the FDIC as receiver of the Bank.  By pursuing those claims and seeking the

21  same insurance proceeds as claims the FDIC-R may seek, the Trustee is usurping the FDIC-R's rights to

22  recover insurance proceeds that in fact should be payable to the FDIC-R and, therefore, should be

23  treated as funds to which the FDIC-R, not the Trustee, ultimately will be entitled.  It cannot be disputed

24  that the FDIC-R has an interest in the pending adversary proceeding.

25  **a.    The FDIC-R and the Trustee have competing interests in the same Directors' and Officers' Liability Insurance Policies.**

26

27  Both the Trustee's Complaint and the claims that may be asserted by the FDIC-R invoke

28  insurance coverage under an extensive (i) directors, officers, and company liability insurance policies

1   for claims made or potentially deemed made in the 2007-08 and/or 2008-09 coverage years and (ii)

2   certain fiduciary insurance policies made or potentially deemed made in the 2007-08 and/or 2008-09

3   coverage years (collectively, the "**D&O Policies**") maintained by the Bank.  The D&O Policies provide

4   broad coverage for exactly the sort of director malfeasance alleged by the Trustee.  The D&O Policies

5   provide a total of at least $160 million in limits over the two policy years (2007-2008 and 2008-2009)

6   potentially implicated by the Trustee's and the FDIC-R's claims.  The policies are "self-consuming" or

7   "wasting" such that attorneys' fees incurred in claims litigation reduces the policy limits available to pay

8   judgments or settlements.

9        If this Motion is denied, the FDIC-R may be prejudiced due to a reduced pool of available D&O

10  Policies and proceeds which would otherwise be available to satisfy the FDIC-R's potential claims

11  against the Bank's former directors and officers for injuries caused to the Bank.

12            b.      **The FDIC-R owns claims that the Trustee asserts since the Trustee's
                      claims are derived from the mismanagement of the Bank's officers
13                    and directors and resulted in injury to the Bank.**

14       The Trustee's specific factual allegations focus on alleged errors and omissions committed by

15  Bank management which eventually caused the Bank's failure.  The Bank failed as a result of the

16  actions (or inactions) taken by its own officers and directors.  The Trustee asserts nothing more than a

17  derivative action for injury caused *to* the Bank *by* the Bank's directors and officers, as opposed to injury

18  caused solely to the Debtor by directors and officers of the Debtor.  It is irrelevant that the Trustee's

19  Complaint has taken artful measures to argue that his claims may also arise from "senior management"

20  or Bancorp directors and officers (who also served as Bank directors and officers).  Critically, the

21  Trustee is not limiting himself to recovering the so-called downstreamed transfers.  Instead, the Trustee

22  seeks as unspecified damages against all Defendants "the amount of the 2008 Downstream Transfers

23  plus the *value of any other assets - both tangible and intangible* - that Bancorp lost as a result of the

24  OTS's seizure of the Bank and Bancorp's subsequent bankruptcy petition" (Complaint at 69, ¶ 270; at

25  72, ¶ 277; at 73, ¶ 282; at 76, ¶ 289; at 78, ¶ 296; at 80, ¶ 301; at 81).  This injury can only mean **losses**

26  **suffered by the Bank** and its resulting diminished value as a Bancorp asset - a classic derivative and not

27  individual claim.

28

1    The Financial Institutions Reform Recovery and Enforcement Act of 1989 ("**FIRREA**"),

2    provides that, the FDIC as Receiver, shall by operation of law succeed to "all rights, titles, powers, and

3    privileges of the insured depository institution, and of any stockholder, member, accountholder,

4    depositor, officer, or director of such institution with respect to the institution and assets of the

5    institution." 12 U.S.C. § 1821(d)(2)(A)(i).  As such, the FDIC-R owns (i) all rights of the Bank and (ii)

6    all rights of the Bank's stockholders with respect to the institution.  All claims for injury to the Bank

7    which might be pursued derivatively on behalf of the Bank, or on behalf of the Debtor in a double

8    derivative action, are assets which pass to the FDIC as Receiver.  *Pareto v. FDIC*, 139 F.3d 696, 700 (9th

9    Cir. 1998) ("all rights and powers of a shareholder of the bank to bring a derivative action [are vested] in

10   the FDIC"); *See Brandt v. Bassett (In re: Southeast Banking Corp.)*, 827 F.Supp. 742, 746 (S.D. Fla.

11   1993), *rev'd in part on other grounds*, 69 F.3d 1539 (11th Cir. 1995) (claims which "turn on acts taken

12   by, and injury to, the Bank . . . plead classic derivative claims which can only be asserted by the

13   successors in interest to the Bank, the FDIC"); *FDIC v. Am. Cas. Co.*, 998 F.2d 404, 409 (7th Cir. 1993)

14   (same); *In re Sunrise Securities Litigation*, 916 F.2d 874, 889 (3rd Cir. 1990) (same); *Renfro v. FDIC*,

15   773 F.2d 657, 660 (5th Cir. 1985) (same).

16       In short, the FDIC, upon its appointment as Receiver of the Bank, and in its capacity as such,

17   succeeded to all rights of the Bank and the Debtor (its sole indirect shareholder) to bring any direct,

18   derivative, or double derivative claims for injury to the Bank.

19       State law governs the determination of whether the Trustee's claims are derivative.  "In the

20   absence of a governing federal common law, courts applying the internal affairs doctrine could find [sic]

21   that the State closest analogically to the State of incorporation of an ordinary business is the State in

22   which the federally chartered bank has its main office or maintains its principal place of business.  Cf.

23   61 Fed. Reg. 4866 (1996) (to be codified in 12 CFR § 7.2000) (federally chartered commercial banks

24   may 'follow the corporate governance procedures of the law of the state in which the main office of the

25   bank is located')" *Atherton v. Federal Deposit Insurance Corporation,* 519 U.S. 213, 224 (1997).

26   Bancorp and Bank's main offices were in Pasadena, California, as such, California law will govern

27   whether the Trustee's claims are direct or derivative.

28

1    Additionally, Cal. Corp. Code § 800 governs derivative actions.  Under section 800(b)(1), a

2    plaintiff must be a shareholder at the time of the transaction or action at issue and continue to be so

3    throughout the pendency of the action.  *Grosset v. Wenaas,* 35 Cal.Rptr.3d 58 (Cal. Ct. App. 2005)

4    (dismissing derivative claim for lack of standing), *aff'd,* 42 Cal. 4th 1100 (2008) (Supreme Court

5    opinion establishing that "continuous ownership rule" in shareholder derivative actions applies under

6    California law).  Given the effect of 12 U.S.C. § 1821(d)(2)(A), the Trustee no longer has any of the

7    rights of a stockholder of the Bank (even if the fact that the Trustee at best was the owner of the direct

8    stockholder of the Bank prior to the FDIC's appointment as Receiver).

9        In *Pareto v. FDIC* 139 F.3d 696 (9th Cir. 1998), the Ninth Circuit dismissed an action filed by

10   bank shareholders pursuing a derivative claim based upon the FDIC's powers under FIRREA.  The

11   Court stated:

12
13        "When Congress enacted FIRREA, it put in place a tessellated scheme which was
         designed to provide an orderly method of ending the destabilization taking place in
14        the financial industry, a destabilization that was destroying the institutions
         themselves and the rights of depositors, creditors, insurers and investors.  Part of that
15        statutory mosaic vested great power in the FDIC and that included  giving it all of
         the rights, powers and privileges of the failing institutions, their depositors, account
16        holders, officers, directors and stockholders.  In fine, all of the accouterments of
         ownership were gathered into the hands of a single entity so that it would be in a
17        position to develop a consistent approach to dealing with the institution's various
         problems."
18
19   (*Id.* at p. 701.)  Clearly, Congress intended in FIRREA that the FDIC possess maximum flexibility and

20   opportunity to address, both on a macro and micro level, losses resulting from a destabilized banking

21   industry.

22        *Brandt v. Bassett (In re: Southeast Banking Corp.),* 827 F.Supp.742 (S.D. Fla. 1993), *rev'd, in*

23   *part, on other grounds*, 69 F.3d 1539 (11th Cir. 1995), is also instructive.  In *Brandt*, the Chapter 7

24   trustee of Southeast Banking Corporation, the holding company, sued the directors and officers of that

25   holding company and its wholly owned subsidiary, Southeast Bank.  That trustee alleged breaches of

26   fiduciary duties, negligence, gross negligence and conscious disregard of the best interests of the holding

27   company.  With one exception, the defendants served as directors and officers for both the holding

28   company and the bank.  The FDIC, as receiver, moved to intervene in the action to assert its sole and

1    exclusive ownership of the trustee's asserted claims. In considering whether the trustee's claims were

2    derivative or direct claims, that court applied Florida substantive law (which is similar to California

3    law). That court stated that if the gravamen of the trustee's complaint is injury primarily to the holding

4    company or to the bank's shareholders generally as opposed to an injury sustained by the bank

5    subsidiary, then the claim belongs to the holding company. *Id.* at 745. Rejecting the trustee's argument

6    that the claims in the complaint were really direct claims against the holding company's directors and

7    officers, the court found that the complaint was substantially dominated by derivative allegations arising

8    out of the conduct of the directors and officers of the bank. *Id.* Additionally, the complaint did not

9    allege distinct harm to the holding company, citing averments which turned on acts taken by, and injury

10    to, the bank. *Id.* at 745-746. The court further held that there was "no meaningful distinction between

11    injury suffered by the holding company and the derivative claims of mismanagement, especially where

12    [the holding company's] solvency and success were 'crucially dependent' on the [bank], as alleged in

13    [the complaint]." *Ibid* (emphasis added).

14        In this regard, where a shareholder's claims relate to the failure of the bank, a shareholder may

15    not pursue those claims if they are derivative as to the subsidiary bank. In *Lubin v. Skow (In re Integrity*

16    *Bancshares, Inc.)* (N.D.Ga., Nov. 30, 2009 1:09-CV-1155-RWS) 2009 U.S.Dist. Lexis 112020, the

17    district court considered whether a trustee of a debtor/bank holding company could sue officers and

18    directors of the holding company and its bank subsidiary for breach of duty. There, the *Lubin*

19    defendants had caused the debtor/holding company to assume $34,000,000 in debt obligations incurred

20    in order to contribute or "downstream" capital to the bank subsidiary, the repayment of which depended

21    upon the profitable operation of that bank. In concluding that the trustee lacked standing to pursue this

22    claim, the district court stated:

23        "Harm caused to the Bank by Defendants likely resulted in harm to the
         Debtor as a shareholder of the Bank, but any such harm is secondary and

24        predicated upon injury to the Bank. The Trustee has not alleged any
         claims of mismanagement of the Debtor holding company. While the

25        Trustee added a discussion of the Debtor's capital raising efforts on behalf
         of the bank in the complaint, **such capitalization of the Bank does not**

26        **make the harm alleged direct rather than derivative.** The Trustee
         seems to implicitly recognize as much when he states in the Complaint

27        that 'the Debtor assumed approximately $34,000,0000 under the U.S.
         Bank and Wilmington debt issuances, *the repayment of which depended*

28        *upon Defendants' proper management and profitable operation of the*

> **Bank.'** [sic].  **Therefore, any harm to the Debtor is not as a result of
> the decision to capitalize the Bank, but rather as a result of
> mismanagement of the Bank."**

*Lubin v. Skow* (*In re Integrity Bancshares, Inc.*), *supra*, 2009 U.S.Dist. Lexis 112020 at pp. *15-*16;
(emphasis in bold added, italics in original).  As the *Lubin* court observed in its footnote 4, the harm
alleged by the Trustee in *Lubin* "is the same as that alleged in [*Brandt v. Basset* (*In re Southeast Banking
Corporation*) (827 F. Supp. 742, 746 (S.D.Fla. 1993)]) to which the court remarked, '[t]here is no
meaningful distinction between injury suffered by the holding company and the derivative claims of
mismanagement, especially where [the holding company's] solvency and success were "crucially
dependent" on the bank'." *Lubin v. Skow* (*In re Integrity Bancshares, Inc.*), *supra*, 2009 U.S.Dist. Lexis
112020 at pp. *15, fn. 4.

   *Lubin* presented essentially the same circumstances that exist here between the Trustee in
Bancorp's bankruptcy case and the FDIC's receivership of the Bank.  The Trustee herein seeks a
recovery of unspecified damages all related to the Bank's mismanagement of the IndyMac enterprise.
Bank officers and directors breached their duties and caused harm when: "the Bank over-expanded its
product guidelines during the housing boom (especially second liens, piggybacks, HELOCs, and
subprime mortgages); the Bank's underwriting procedures failed to detect speculators making high
combined loan-to-value purchases; the Bank failed to implement certain essential credit hedges; and, the
Bank significantly underestimated the length and severity of the housing downturn."  (Complaint at 60,
¶ 232).

   The Complaint is crammed with numerous other allegations focused on injury caused by *Bank*
mismanagement (or at least "company" mismanagement.  The reference to Michael Perry's email quote
about IndyMac's quarterly losses is of losses to the Bank, not Bancorp.  (Complaint at 34, ¶ 130-131).
The Trustee also refers to the urgent need of the "Company" for additional capital in mid-2007.  As
stated, "Company" is deftly defined as Bank and Bancorp therefore obscuring the clear fact that it was
the Bank that required capital funds.  (Complaint at 35, ¶ 135).  The Trustee refers to the Treasury
Report (as defined in the Complaint) giving "Bancorp" a "2" rating.  (Complaint at 36, ¶ 137).  That is a

CAMELS[4] rating from the Treasury Department's investigation and examination of the *Bank* only. In fact, the entire Treasury Report is an investigation by the Office of Inspector General on the "failure of IndyMac Bank, FSB (IndyMac) of Pasadena" only, not Bancorp. *See* Treasury Report, page 1, as Exhibit 1 to the Complaint. The fact that the Trustee cites the Treasury Report in support of the Complaint is inconsistent with his claims against the Bancorp Defendants.

Further and without fully summarizing Appendix 1 hereto, a review of the Complaint highlights the fact that the Trustee's alleged harm to Bancorp are really cloaked injuries caused to the Bank by the mismanagement of the Bank. These include references to the Bank's "high-risk business model" (Complaint at 49, ¶ 187), [under] capitalization of the Bank (Complaint at 50, ¶ 193) and risk of regulatory intervention (Complaint at 50, ¶ 195). In fact at one point, the Trustee refers to injury caused by the Defendants' disregard to pursue opportunities to sell "Financial Freedom." (Complaint at 45 - 46, ¶ 169, 173 – 174). Such assertions seem inexplicable since it actually supports the FDIC-R's position. Financial Freedom was the Bank's wholly owned subsidiary and any harm arising out of a neglected sale of Financial Freedom is a claim that belongs exclusively to the FDIC-R. *See* "Chapter 7 Trustee's Motion for Expedited Issuance of Order Authorizing" Rule 2004 Motion filed on January 12, 2009, ¶¶ 19 and 21 (conceding that Bank owns 100% stock of Financial Freedom) [Bankruptcy Docket No. 199]

Moreover, the Trustee's purported claims are phrased as relating to the Defendants (a) failing to raise capital for the benefit of the Bank, (b) downstreaming money by way of capital contributions to benefit the Bank and (c) participating with the Bank in a 2008 backdating of a certain capital infusion into the Bank. However, but for the mismanagement of the Bank and the Bank's ultimate failure, Bancorp could claim no colorable injury. This fundamental fact cannot be altered by the Complaint's window dressing which attempts to characterize the Trustee's allegations as failures in the Holding Company's management. In the end, however, all that the Trustee alleges is that the Debtor lost its indirect investment in the Bank because of the financial deterioration and ultimate collapse of the Bank. The actions (and inactions) that led to such failure, to the extent they are actionable, give rise to claims

---

4 /    "An acronym for the performance rating components: Capital adequacy, Asset quality, Management administration, Earnings, Liquidity, and Sensitivity to market risk. Numerical values range from 1 to 5, with 1 being the highest rating and 5 representing the worst-rated banks." Treasury Report, page 47, attached as Exhibit 1 to the Complaint.

1   for damages owned by the FDIC-R and payable out of available insurance proceeds to the FDIC-R. By

2   definition, any claims that the Trustee could have for losses suffered by the Bank's collapse, including

3   the inability to recover downstreamed capital or for damage to "other assets", arise from the Debtor's

4   status as an indirect stockholder of the Bank. Hence, the Trustee can have no claims resulting from the

5   Bank's failure other than claims that ultimately are derivative.

6       For example, the Trustee's Complaint alleges injury to Bancorp as a result of wrongdoing by

7   various Defendants in their capacities as members of the Enterprise Risk Management ("*ERM*")

8   Committee. The Trustee implies that the ERM Committee was a Bancorp group by stating that it the

9   committee "was responsible for assisting *Bancorp's* full Board in the performance of its duty to

10  "oversee: (i) the actions of *Bancorp* management in implementing *Bancorp*-wide risk management

11  policies and strategies, (ii) risk management activities, and (iii) the risk condition of *Bancorp*.

12  (Complaint at 8, fn. 3). In reality, the Bank had an ERM group which was operating at the Bank level.

13  Bancorp's own publicly filed SEC documents state that "the primary purpose of this [ERM] Committee

14  is to ensure the establishment of *company-wide* risk management policies and strategies governing key

15  risk factors related to capital adequacy, asset quality, management, earnings, liquidity, and sensitivity to

16  market risk. The Committee also oversees regulatory matters." (IndyMac Bancorp Inc., Definitive

17  Proxy Solicitation Material – Schedule 14A, page 17 (filed on March 24, 2008, available at

18  http://sec.gov/Archives/edgar/data/773468/000095013408005221/v38985def14a.htm). Any errors or

19  omissions by ERM committee members would necessarily involve duties owed to the proper

20  management of the Bank, not Bancorp and certainly not Bancorp alone.

21      As in the *Pareto* and *Lubin* cases, so too here, any harm allegedly suffered by the Debtor does

22  not result from any failure by the directors or officers of Bancorp to capitalize the Bank, any

23  downstreaming money to the Bank or any backdating of capital infusion to the Bank. Rather, those

24  claims are derived from the mismanagement of the Bank. Bancorp was simply a holding company.

25  Fundamentally, Bancorp's sole purpose was to provide capital support for the Bank and to invest in the

26  Bank. As a result, any damage allegedly suffered by Bancorp was in its capacity as a shareholder of the

27  Bank and was caused by the Bank's operations (and any alleged mismanagement or breach of duties by

28  the Bank's officers and directors. (Complaint at 60, ¶ 232).

This Court need not decide on this Motion whether the Trustee's Complaint asserts claims belonging to the FDIC-R because it is sufficient to grant this Motion if the FDIC-R establishes a legitimate "interest" in those claims alleged in the Complaint.  As successor-in-interest to the claims and rights of the Bank, the FDIC-R clearly has a sufficient interest in the subject matter of this adversary proceeding to support its intervention under FRCP 24(a)(2).  The Trustee here has no standing to pursue such claims.  To permit him to do so is not only contrary to applicable case law but it would interfere with the FDIC-R's orderly and consistent method of addressing the Bank's failure, essential to the FDIC-R's statutory role under FIRREA as the Ninth Circuit recognized in *Pareto*.

### 3. The FDIC-R will Suffer Practical Impairment of its Ability to Protect its Interest should it not be Permitted to Intervene.

The third prong of intervention as of right is also established.  Without intervention, the FDIC-R's interest will almost certainly be impaired since the Trustee and FDIC-R have competing claims to the D&O Policies, possibly the only significant source of recovery for the FDIC-R's claims.  The Trustee is also asserting claims owned exclusively by the FDIC-R for the mismanagement of the Bank.  The Trustee seeks to recover damages arising out of alleged breaches of fiduciary duties and mismanagement by former directors and officers of the Bank.  As discussed above, the FDIC-R has sole ownership of such claims to the extent they relate to injury caused to the Bank.  Whether or not such injury also resulted in harm suffered by the Debtor (as the Bank's indirect stockholder) is collateral damage that is derivative and irrelevant for purposes of this analysis.  As Receiver for the Bank, the FDIC succeeded to these claims under a FIRREA.  Intervention in this adversary proceeding is necessary to assure that the prosecution of the Trustee's derivative action does not threaten the FDIC-R's congressional mandate to maximize the recovery of assets for the receivership estate.

There is a limit on the personal assets of the Defendants named in this adversary proceeding. There is also a limit on the insurance coverage that can be collected under any claims covered by the D&O Policies which at one point totaled $160 million.  The amount of insurance coverage available to satisfy claims for director and officer liability is diminished by the amount of money expended by the carriers in defending such claims (regardless of their outcome) as well as any payments of claims covered by those policies.  Substantial defense costs are being incurred in defending against the claims

in the Trustee's Complaint, which will concomitantly reduce the assets available to satisfy the exclusive claims of the FDIC as Receiver of Bank. Absent intervention, the harm to the FDIC-R would be severe and irreparable because the Trustee may recover, by way of damages or settlement, monies to which the FDIC-R has an exclusive right. The only practical way, therefore, for the FDIC-R to protect its interests in the FDIC-R's claims against former directors and officers of Bank and the D&O Policies is by the FDIC intervening in this adversary proceeding.

> **4.    The FDIC-R's Interests Are Not Adequately Protected by the Trustee or the Former Directors and Officers of Bancorp and Bank. In fact, the FDIC-R's Interests May be Directly Adverse with the Existing Parties.**

To determine whether the existing parties adequately represent an applicant's interest, a court should consider:

> (1) whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments; (2) whether the present party is capable and willing to make such arguments and (3) whether the would-be intervenor would offer any necessary elements to the proceedings that other parties would neglect.

*City of Los Angeles,* 288 F.3d at 298. "The applicant-intervenor's burden in showing inadequate representation is minimal: it is sufficient to show that representation *may* be inadequate." *Forest Conservation Counsel,* 66 F.3d 1489, 1498 (9th Cir. 1995).

The FDIC-R's "minimal" burden is easily satisfied here. The interests of the FDIC-R are not represented adequately by the existing parties to this adversary proceeding. Since the FDIC-R ultimately seeks to establish that the Trustee's claims are owned by the FDIC-R, its interests are by their very nature adverse to the Trustee's interests. Any complaint filed by the FDIC-R either against directors or officers of the Bank is almost certain to assert claims arising from the mismanagement of the Bank and the Bank's assets. The FDIC-R's position may be that duties owed to the Bank were breached, subject to the conclusions reached in the FDIC-R's pending investigations.

Upon completion of its on-going investigations, the FDIC-R will determine whether to file its own action or actions against various parties, including former directors and officers of the Bank (some of who also may have also been directors of the Debtor). The Defendants named in the Trustee's Complaint are individuals that also served as directors or officers of the Bank. These individuals may or may not be subject to the FDIC-R's continuing investigation.

**FDIC'S NOTICE OF MOTION AND MOTION TO INTERVENE**

1    As such, both the Trustee and the Defendants must be treated as adverse to the FDIC-R for

2    purposes of this Motion.  The FDIC-R cannot rely on the Trustee or the Defendants in the adversary

3    proceeding to adequately represent its interests.

4    **B.    If Intervention As of Right Is Not Granted, Alternatively, Permissive Intervention**
     **Should Be Granted Because The FDIC-R's Potential Claim And The Trustee's**

5    **Complaint Share Common Questions Of Law And Fact.**

6    Even if the Court determines that the FDIC-R cannot intervene as a matter of right under FRCP

7    24(a)(2), it should nonetheless grant the FDIC-R's request to permissively intervene under FRCP 24(b).

8    The standard for permissive intervention is low.  FRCP Rule 24(b)(1)(B) provides that:

9    (1) On timely motion, the court may permit anyone to intervene who:
     (B) has a claim or defense that shares with the main action a common question of law or
10   fact.

11   "In exercising its discretion, the court must consider whether the intervention will unduly delay

12   or prejudice the adjudication of the original parties' rights. Fed. R. Civ. Proc. 24(b)(3).  "The existence

13   of a 'common question' is liberally construed." *Bureerong v. Uvawas,* 167 F.R.D. 83, 85 (C.D. Cal.

14   1996).

15   The FDIC-R's Complaint in Intervention and the Trustee's Complaint share a nucleus of laws

16   and facts concerning the mismanagement and ultimate failure of the Bank.  As set forth in the Complaint

17   in Intervention, the FDIC-R contends that the specific factual allegations of the Trustee's Complaint

18   focus on errors or omissions taken by directors and officers of the Bank, *not exclusively* as directors and

19   officers of the Debtor.  Thus, the FDIC-R and the Trustee assert numerous and overlapping questions of

20   fact and law, including, but not limited to, the capacity in which the defendant directors and officers

21   allegedly acted or failed to act.  Further, given that this adversary proceeding is in its  preliminary stage

22   having been filed less than 2 months ago and in light of the extended time periods implemented by the

23   Continuation Order, intervention by the FDIC-R will not delay the litigation, nor will it prejudice the

24   adjudication of the rights of the existing parties.  Indeed, granting this motion will ensure that all parties

25   with a stake in this dispute will have a chance to be heard in a judiciously efficient manner.

26

27

28

**FDIC'S NOTICE OF MOTION AND MOTION TO INTERVENE**

**C.    The Court Should Stay This Adversary Proceeding Pending A Ruling On The FDIC-R'S Motion to Intervene And/Or Other Dispositive Motions.**

The FDIC-R requests that this Court enter an Order staying this adversary proceeding pending a ruling on the FDIC-R's motion to intervene and/or other dispositive motions the FDIC-R may be filing shortly. A stay of this adversary proceeding is proper because the assertion that the FDIC as Receiver of IndyMac Bank has succeeded by operation of law to the derivative claims alleged in the Complaint is well-founded; the FDIC-R will suffer irreparable harm if a stay is not granted; the Trustee will suffer no harm by a stay; and the public interest as set forth under FIRREA will be served by granting a stay.

## IV.    RESERVATION OF RIGHTS.

The filing of the Motion does not constitute a submission by the FDIC-R to the jurisdiction or authority of the Bankruptcy Court, as defined below, for the resolution of any regulatory matter involving the Debtors, or the FDIC-R. Nor is the Motion an admission that this Court is the appropriate forum for resolution of disputes between the FDIC-R and the Debtor other than with respect to the Motion. The filing of the Motion shall not constitute a waiver or consent by the FDIC-R of any right to assert Sovereign Immunity whether the FDIC is acting in its capacity as receiver or otherwise.

The filing of the Motion shall not constitute a waiver or consent by the FDIC-R of any (a) right to have any and all final orders in any and all non-core matters entered only after de novo review by the United States District Court; (b) right to trial by jury in any proceedings as to any and all matters so triable therein, whether or not the same be designated legal or private rights, or in any case, controversy or proceeding related thereto, whether or not such jury trial right is pursuant to statute or the United States Constitution; (c) right to have the reference of this matter withdrawn by the United States District Court in any matter or proceeding subject to mandatory or discretionary withdrawal; or (d) other rights, claims, actions, defenses, setoffs, recoupments or other matters to which the FDIC-R is entitled under any agreements or at law or in equity or under the United States Constitution.

Except with respect to the specific statements in the Motion, all of the foregoing rights are expressly reserved and preserved without exception and with no purpose of conceding jurisdiction in any way by filing the Motion. The FDIC-R expressly reserves all rights at law and equity to assert the

1  preemption of the Bankruptcy Court's jurisdiction and the exclusive jurisdiction provided under Title 12

2  as applicable with respect to the FDIC-R.

3  **V.      CONCLUSION.**

4         The FDIC-R's motion to intervene is both timely and necessary to an appropriate, orderly and

5  efficient resolution of the matters being considered in the Trustee's Complaint.  Because the FDIC-R's

6  interest in the D&O Policies and Bank derived claims will be impaired if this proceeding is resolved

7  without allowing the FDIC-R to intervene, the FDIC-R respectfully requests that this Court rule that the

8  FDIC-R is a proper intervenor and may file its Complaint in Intervention in this adversary proceeding.

9  The FDIC-R also requests that this Court enter an Order staying this adversary proceeding pending a

10  ruling on this Motion.

11

12  Dated: January 13, 2010                     NOSSAMAN LLP
                                               Allan H. Ickowitz
13                                             Thomas D. Long
                                               John W. Kim
14

15

16                                             By: _____
                                                       JOHN W. KIM
17                                             Attorneys for The Federal Deposit Insurance Corporation, in
                                               its capacity as Receiver of IndyMac Bank, F.S.B.
18

19

20

21

22

23

24

25

26

27

28

**FDIC'S NOTICE OF MOTION AND MOTION TO INTERVENE**

| In re: IndyMac Bancorp, Inc. | CHAPTER 7 |
|---|---|
| Debtor(s). | CASE NUMBER:  09-ap-02645-BB |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

### PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: **Nossaman LLP, 445 S. Figueroa Street, 31st floor, Los Angeles, CA 90071**

The foregoing documents described **(1) NOTICE OF MOTION AND MOTION OF THE FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER OF INDYMAC BANK, F.S.B., TO INTERVENE IN ADVERSARY PROCEEDING AND TO STAY PROCEEDING; (2) "APPENDIX 1" TO THE NOTICE OF MOTION AND MOTION OF THE FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER OF INDYMAC BANK, F.S.B., TO INTERVENE IN ADVERSARY PROCEEDING AND TO STAY PROCEEDING ; and (3) [PROPOSED] COMPLAINT IN INTERVENTION OF INTERVENOR THE FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER OF INDYMAC BANK, F.S.B.** will be served or were served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **January 13, 2010**I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒    Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served): On _____ I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

☐    Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **January 13, 2010** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

**VIA PERSONAL DELIVERY**
The Honorable Sheri Bluebond
United States Bankruptcy Court
255 E. Temple Street, Suite 1482
Los Angeles, CA 90012

☒    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| January 13, 2009 | Mitchi Shibata | /s/ Mitchi Shibata |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

| In re: IndyMac Bancorp, Inc. | | CHAPTER 7 |
|---|---|---|
| | Debtor(s). | CASE NUMBER: 09-ap-02645-BB |

## **SERVICE LIST**

### I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")

Lee Bogdanoff    lbogdanoff@ktbslaw.com
Matthew Heyn    mheyn@ktbslaw.com
Andrew L. Sandler    asandler@buckleysandler.com
Alfred H Siegel    ahstrustee@horwathcal.com, ca51@ecfcbis.com
John W. Spiegel    John.Spiegel@mto.com
United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
D. Jean Veta    jveta@cov.com

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                          **F 9013-3.1**