1  LOUIS E. KEMPINSKY (State Bar No. 90068)
   E-mail: lkempinsky@pwkllp.com
2  JOHN C. KEITH (State Bar No. 229755)
   Email: jkeith@pwkllp.com
3  PEITZMAN WEG & KEMPINSKY LLP
   10100 Santa Monica Boulevard
4  Los Angeles, CA 90067
   Phone: 310-552-3100
5  Fax: 310-552-3101

6  D. JEAN VETA (*pro hac vice* application pending)
   E-mail: jveta@cov.com
7  BENJAMIN J. RAZI (*pro hac vice* application pending)
   E-mail: brazi@cov.com
8  DENNIS B. AUERBACH (*pro hac vice* application pending)
   E-mail: dauerbach@cov.com
9  COVINGTON & BURLING LLP
   1201 Pennsylvania Avenue, NW
10 Washington, D.C. 20004
   Phone: 202-662-6000
11 Fax: 202-662-6291

12 Attorneys for Defendant Michael W. Perry

13              UNITED STATES BANKRUPTCY COURT

14              CENTRAL DISTRICT OF CALIFORNIA

15                   LOS ANGELES DIVISION

16

17 | In re
                                        | Case No.: 2:08-bk-21752-BB
18 | INDYMAC BANCORP, INC.,
                                        | Chapter 7
19 |              Debtor.
                                        | Adversary Proc. No. 2:09-02645-BB
20 | ALFRED H. SIEGEL, solely as Chapter  | [Motion to Withdraw Reference pending in
   | 7 Trustee of the estate of IndyMac    | Case No.: CV10-0179-RGK)]
21 | Bancorp, Inc.,
                                        | **DEFENDANT MICHAEL W. PERRY'S**
22 |              Plaintiff,             | **NOTICE OF MOTION AND MOTION**
                                        | **TO DISMISS ADVERSARY**
23 | v.                                  | **PROCEEDING; MEMORANDUM OF**
                                        | **POINTS AND AUTHORITIES**
24 | LOUIS E. CALDERA, LYLE E.
   | GRAMLEY, HUGH M. GRANT,             | **Hearing**
25 | PATRICK C. HADEN, TERRANCE G.       | Date:      April 20, 2010
   | HODEL, ROBERT L. HUNT II, LYDIA     | Time:      2:00 PM
26 | H. KENNARD, BRUCE G. WILLISON,      | Location:  Courtroom 1475
   | AND MICHAEL W. PERRY,               |            255 East Temple Street
27 |                                     |            Los Angeles, CA 90012
   |              Defendants.
28

1    **TO THE HONORABLE SHERI BLUEBOND, UNITED STATES**

2    **BANKRUPTCY JUDGE, PLAINTIFF, THE OFFICE OF THE UNITED STATES**

3    **TRUSTEE, AND ALL PARTIES ENTITLED TO NOTICE HEREIN AND THEIR**

4    **ATTORNEYS OF RECORD:**

5        **PLEASE TAKE NOTICE** that on April 20, 2010, at 2:00 P.M., before the

6    Honorable Sheri Bluebond, United States Bankruptcy Judge, in Courtroom 1475, located at 255

7    East Temple Street, Los Angeles, California, 90012, defendant Michael W. Perry ("Mr. Perry")

8    will and hereby does move this Court for an order dismissing with prejudice the complaint in

9    the above-captioned adversary proceeding (the "Complaint") as against Mr. Perry.  Mr. Perry

10   moves to dismiss on the ground that the chapter 7 trustee for the estate of the above-captioned

11   debtor IndyMac Bancorp, Inc., lacks standing to assert the claims alleged in the Complaint, and,

12   pursuant to Federal Rule of Civil Procedure 12(b)(6) (incorporated herein by Federal Rule of

13   Bankruptcy Procedure 7012), on the ground that the Complaint fails to state a claim against Mr.

14   Perry upon which relief can be granted.  If the pending Motion for Withdrawal of the Reference

15   filed by Mr. Perry and the other Defendants is granted, then this Motion will be heard as soon as

16   counsel may be heard before the United States District Court, Spring Street Courthouse, 312

17   North Spring Street, Los Angeles, California.

18       **PLEASE TAKE FURTHER NOTICE** that the Motion is based upon this Notice of

19   Motion and Motion, the attached Memorandum of Points and Authorities, the concurrently filed

20   Request for Judicial Notice, any reply papers Mr. Perry may file, the motion to dismiss and

21   supporting materials filed by the other Defendants, the records and files in this chapter 7 case

22   and adversary proceeding, and such additional evidence and argument as may be presented at or

23   before the hearing on the Motion.

24       **PLEASE TAKE FURTHER NOTICE** that pursuant to the Court's Order dated

25   December 16, 2009, a formal response to the Motion must be filed with the Bankruptcy Court

26   and served on counsel for Mr. Perry and on the United States trustee no later than March 10,

27   2010.  Pursuant to Local Bankruptcy Rule 9013-1(h), failure to file and serve a timely response

28

1    may be deemed by the Bankruptcy Court to be consent to the granting of the relief requested in

2    the Motion.

3    DATED:  February 1, 2010                    Respectfully submitted,

4                                                PEITZMAN, WEG & KEMPINSKY LLP

5

6                                                By:    /s/ Louis E. Kempinsky
                                                        Louis E. Kempinsky

7                                                Attorneys for Defendant Michael W. Perry

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................. 1

II.   THE COMPLAINT ............................................................................. 3

III.  ARGUMENT ....................................................................................... 5

    A.    Plaintiff Lacks Standing to Assert the Bank Mismanagement Claims. ................ 5

    B.    All of Plaintiff's Affirmative Claims Must Also Be Dismissed Because the Facts Alleged in the Complaint Do Not State Plausible Causes of Action Against Mr. Perry. ....................................................................... 10

        1.    Standard of Review.......................................................................... 10

        2.    Plaintiff's Claim That Mr. Perry Did Not Take Adequate Steps to Raise Capital for the Bank Should Be Dismissed for Failure to State a Claim.................................................................................... 11

            a.    Plaintiff Has Not Stated a Plausible Claim That Mr. Perry Breached His Fiduciary Duties..................................... 11

            b.    Plaintiff Has Not Stated a Plausible Claim That the Alleged Conduct Proximately Caused the Bank's Loss. ............. 14

        3.    Plaintiff's "Red Flags" Claim Should Be Dismissed for Failure to State a Claim.................................................................................... 15

        4.    Plaintiff's Accounting Treatment Claim Against Mr. Perry Should Be Dismissed for Failure to State a Claim. ............................... 17

        5.    Plaintiff's Abdication Claim Against Mr. Perry Should Be Dismissed for Failure to State a Claim. .................................................. 18

        6.    Plaintiff's Claims Against Mr. Perry Based on the Capital Contributions from Bancorp to the Bank Should Be Dismissed for Failure to State a Claim.................................................................. 19

            a.    The Complaint Does Not State a "Waste" Claim Regarding Bancorp's Contributions of Needed Capital to Its Wholly-Owned Bank Subsidiary........................................... 19

            b.    Plaintiff Has Not Stated a Plausible Claim That Mr. Perry Breached His Fiduciary Duties by Authorizing the Capital Contributions. ................................................................... 21

            c.    Bancorp's Capital Contributions to the Bank Were Consistent With Bancorp's Regulatory Obligations................... 22

    C.    Plaintiff's Subordination and Disallowance Claims Against Mr. Perry Should Be Dismissed. ......................................................................... 25

IV.   CONCLUSION........................................................................................ 26

DEFENDANT MICHAEL W. PERRY'S NOTICE OF MOTION
AND MOTION TO DISMISS ADVERSARY PROCEEDING;
MEMORANDUM OF POINTS AND AUTHORITIES

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alberts v. Tuft (In re Greater Southeast Cmty. Hosp. Corp. I)*,
353 B.R. 324 (Bankr. D.D.C. 2006) ............................................................................... 14, 18

*Aronson v. Lewis*,
473 A.2d 805 (Del. 1984) ................................................................................................ 12, 21

*Ash v. McCall*,
No. 17132, 2000 Del. Ch. LEXIS 144 (Del. Ch. Sept. 15, 2000) ......................................... 11

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009) ....................................................................................................... 7, 10

*Bd. of Governors of Fed. Reserve Sys. v. First Lincolnwood Corp.*,
439 U.S. 234 (1978) .................................................................................................................. 23

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .................................................................................................................. 10

*Brandt v. Bassett (In re Southeast Banking Corp.)*,
827 F. Supp. 742 (S.D. Fla. 1993) ........................................................................................ 6, 7

*Cinerama, Inc. v. Technicolor, Inc.*,
663 A.2d 1156 (Del. 1995) ...................................................................................................... 13

*Citizens Fed. Bank v. United States*,
66 Fed. Cl. 179, 190 (2005) .................................................................................................... 24

*Collins & Aikman Corp. v. Stockman*,
No. 07-265, 2009 U.S. Dist. LEXIS 43472 (D. Del. May 20, 2009) ................................ 12, 13

*Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II, L.P.*,
624 A.2d 1199 (Del. 1993) ................................................................................................ 12, 22

*Dreiling v. Am. Express Co.*,
458 F.3d 942 (9th Cir. 2006) ..................................................................................................... 8

*Gagliardi v. Trifoods Int'l, Inc.*,
683 A.2d 1049 (Del. Ch. 1996) ............................................................................................... 11

*Gantler v. Stephens*,
965 A.2d 695 (Del. 2009) ........................................................................................................ 13

*Gross v. Weingarten*,
217 F.3d 208 (4th Cir. 2000) ................................................................................................... 17

*Harbor Fin. Partners v. Huizenga*,
751 A.2d 879 (Del. Ch. 1999) ................................................................................................. 19

DEFENDANT MICHAEL W. PERRY'S NOTICE OF MOTION
AND MOTION TO DISMISS ADVERSARY PROCEEDING;
MEMORANDUM OF POINTS AND AUTHORITIES

ii

*Hill v. State Farm Mut. Auto Ins. Co.*,
    166 Cal. App. 4th 1438 (2008) .................................................................20

*Hunter v. Philip Morris USA*,
    582 F.3d 1039 (9th Cir. 2009) .................................................................25

*In re Caremark Int'l, Inc. Derivative Litig.*,
    698 A.2d 959 (Del. Ch. 1996) .................................................................14

*In re Citigroup Inc. S'holder Derivative Litig.*,
    964 A.2d 106 (Del. Ch. 2009) .................................................................12, 16, 17

*In re Countrywide Fin. Corp. Derivative Litig.*,
    554 F. Supp. 2d 1044 (C.D. Cal. 2008) .................................................19

*In re Dow Chem. Co. Derivative Litig.*,
    No. 4349-CC, 2010 WL 66769 (Del. Ch. Jan. 11, 2010) ......................22

*In re Encore Computer Corp. S'holders Litig.*,
    No. 160444, 2000 Del. Ch. LEXIS 93 (Del. Ch. June 16, 2000) ..........13, 21

*In re Fedders N. Am., Inc.*,
    405 B.R. 527 (Bankr. D. Del. 2009) .......................................................13, 16

*In re Morgan Stanley & Co. Auction Rate Derivative Litig.*,
    No. 08 Civ. 7587, 2009 U.S. Dist. LEXIS 65166 (S.D.N.Y. July 22, 2009) ..........17

*In re Toys "R" Us, Inc. S'holder Litig.*,
    877 A.2d 975 (Del. Ch. 2005) .................................................................13, 21

*In re USA Detergents, Inc.*,
    No. 09-50100, 2009 U.S. Bankr. LEXIS 3305 (Bankr. D. Del. Oct. 16, 2009) ..........11

*In re Verisign, Inc. Derivative Litig.*,
    531 F. Supp. 2d 1173 (N.D. Cal. 2007) ..................................................11

*In re Walt Disney Co. Derivative Litig.*,
    906 A.2d 27 (Del. 2006) .................................................................12, 19, 20, 25

*La. Mun. Police Employees Ret. Sys. v. Pandit*,
    No. 08 Civ. 7389, 2009 WL 2902587 (S.D.N.Y. Sept. 10, 2009) ..........17

*Lubin v. Skow (In re Integrity Bancshares)*,
    No. 09-1155, 2009 U.S. Dist. LEXIS 112020 (N.D. Ga. Nov. 30, 2009) ..........6, 7

*Lyondell Chem. Co. v. Ryan*,
    970 A.2d 235 (Del. 2009) .................................................................22

*Malpiede v. Townson*,
    780 A.2d 1075 (Del. 2001) .................................................................14

*Marder v. Lopez*,
   450 F.3d 445 (9th Cir. 2006) ............................................................13

*Moss v. U.S. Secret Service*,
   572 F.3d 962 (9th Cir. 2009) ............................................................10

*Official Comm. of Unsecured Creditors. of Integrated Health Servs., Inc. v. Elkins*,
   No. 20228-NC, 2004 Del. Ch. LEXIS 122 (Del. Ch. Aug. 24, 2004)..............19, 21

*Orman v. Cullman*,
   794 A.2d 5 (Del. Ch. 2002) ............................................................13

*Pareto v. FDIC*,
   139 F.3d 696 (9th Cir. 1998) ............................................................6

*Parks Sch. of Bus., Inc. v. Symington*,
   51 F.3d 1480 (9th Cir. 1995) ............................................................3

*People v. Coast Fed. Sav. and Loan Ass'n*,
   98 F. Supp. 311 (S.D. Cal. 1951)........................................................23

*Plevy v. Haggerty*,
   38 F. Supp. 2d 816 (C.D. Cal. 1998) ..................................................8

*Resolution Trust Corp. v. Tetco, Inc.*,
   758 F. Supp. 1159 (W.D. Tex. 1990), *vacated as moot per settlement*, No. 91-5612,
   1992 WL 437650 (5th Cir. 1992) ......................................................24

*Roselink Investors, L.L.C. v. Shenkman*,
   386 F. Supp. 2d 209 (S.D.N.Y. 2004) ............................................20, 22

*Sci. of Skincare, LLC v. Phytoceuticals, Inc.*,
   No. 08-4470, 2009 U.S. Dist. LEXIS 58241 (C.D. Cal. July 8, 2009)..................15

*Stone ex rel. AmSouth Bancorp. v. Ritter*,
   911 A.2d 362 (Del. 2006) ............................................................11

*United States v. AT&T*,
   552 F. Supp. 131 (D.D.C. 1982)........................................................20

*Zupnick v. Goizueta*,
   698 A.2d 384 (Del. Ch. 1997) ........................................................19

**STATUTES**

11 U.S.C. § 510(b)...........................................................................25, 26

11 U.S.C. § 510(c)...............................................................................25

12 U.S.C. § 1821(d)(2)(A)(i)......................................................................6

12 U.S.C. § 1828(u)(1) ...........................................................................................................24

28 U.S.C. § 157(d) ..................................................................................................................3

Del. Code Ann. tit. 8, § 102(b)(7)..........................................................................................14

Financial Institutions Reform, Recovery and Enforcement Act of 1989 ....................5, 6

OTHER AUTHORITIES

12 C.F.R. § 225.4(a)(1)......................................................................................................3, 23

65 Fed. Reg. 64392, 64396 (Oct. 27, 2000) ........................................................................23

Federal Rule of Bankruptcy Procedure 7012.......................................................................10

Federal Rule of Civil Procedure 12(b)(6) ............................................................................10

H.R. Conf. Rep. No. 106-434 (1999) ....................................................................................24

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

IndyMac Bancorp, Inc. ("Bancorp") filed for bankruptcy in July 2008, amidst the wreckage of the mortgage lending crisis.  It was the holding company of IndyMac Bank, F.S.B. (the "Bank"), a federally-insured thrift institution, which experienced catastrophic losses from defaulted mortgage loans and downgrades of its investment securities before being placed in FDIC receivership.  With the knowledge and support of its principal federal regulator, Bancorp provided hundreds of million dollars of capital to the Bank to keep it sound, but those efforts proved unsuccessful.  Because the Bank was Bancorp's only significant asset, its failure spelled Bancorp's demise as well.

Bancorp's Chapter 7 bankruptcy trustee has now sued the former CEO and Chairman of Bancorp and the Bank, Michael Perry, claiming that he (along with all but one of Bancorp's former outside directors) is personally liable for the losses suffered as a result of the Bank's collapse.  As explained below, these claims must be dismissed.

As a threshold matter, Plaintiff lacks standing to assert most of his affirmative claims.  With one exception, they are based on alleged mismanagement of and direct injury to the Bank, not Bancorp.  Plaintiff, however, is simply the representative of the Bancorp estate (Compl. ¶ 16), and thus only has standing to bring claims based on alleged direct injury to the holding company itself.  Under federal law, the FDIC, as receiver for the Bank, has exclusive standing to bring claims based on direct injury to the Bank, as well as derivative claims on behalf of Bancorp in its capacity as the Bank's shareholder.

Plaintiff's mismanagement claims here are plainly derivative in nature, *i.e.*, they are based on alleged direct injury to the Bank, with Bancorp impacted only in an indirect, derivative capacity through the loss of its investment in the Bank subsidiary.  For instance, Plaintiff contends that Defendants did not pursue alleged opportunities to raise essential outside capital for the Bank; and that Defendants did not heed alleged red flags regarding the mortgage crisis, causing the Bank to pursue an unduly risky business strategy.  These claims do not belong to Plaintiff and thus must be dismissed for lack of standing.

DEFENDANT MICHAEL W. PERRY'S NOTICE OF MOTION
AND MOTION TO DISMISS ADVERSARY PROCEEDING;
MEMORANDUM OF POINTS AND AUTHORITIES

1

1    The mismanagement claims must also be dismissed because the alleged facts add

2  up, at most, to a contention that Defendants made poor business decisions — not that they

3  breached their fiduciary duties.  Making poor business decisions, however, is not actionable

4  under applicable Delaware law.  Plaintiff has not alleged that Mr. Perry had a conflict of

5  interest, or that he made his business decisions without adequate information — the essential

6  elements of a breach of fiduciary duty claim in Delaware.  While the Complaint is replete with

7  rhetoric that Mr. Perry acted with "reckless indifference" and with an "evil mind," these

8  conclusory assertions should not be credited on a motion to dismiss.

9    The one claim that Plaintiff arguably does have standing to assert on Bancorp's

10  behalf likewise fails to state a plausible cause of action.  Plaintiff contends that Defendants

11  acted improperly by causing Bancorp to make capital contributions to the Bank during the ten

12  months preceding its failure.  These contributions allegedly wasted corporate assets because

13  they were not sufficient to save the Bank and allegedly benefited the Bank at Bancorp's

14  expense.

15    This claim is not viable because corporate waste will be found only in the rare

16  case where a transaction constitutes a wholly irrational squandering of assets, which

17  demonstrably lacked <u>any</u> rational business purpose.  The facts alleged in the Complaint,

18  however, make clear that Bancorp's capital contributions provided crucial financial support to

19  the holding company's subsidiary and only significant asset — an entity whose interests were

20  completely aligned with those of Bancorp.  The contributions may or may not have been

21  prudent in hindsight, but they cannot plausibly be deemed to have been wholly irrational.

22    Moreover, because Bancorp is the holding company of a federally insured and

23  regulated thrift depository institution, its contributions to the Bank to keep it well capitalized

24  were entirely consistent with federal regulatory obligations.  Pursuant to its regulatory authority,

25  the Bank's primary regulator, the Office of Thrift Supervision ("OTS"), requires that thrift

26  holding companies like Bancorp support their subsidiaries to minimize the risk that the

27  government will need to take over and bail out failing thrifts.  This is known as the "source of

28  strength" doctrine, which, as codified in a related context, provides that "[a] bank holding

1    company shall serve as a source of financial . . . strength to its subsidiary banks."  12 C.F.R.

2    § 225.4(a)(1).  An OTS memorandum attached as an exhibit to the Complaint (and which may

3    thus be considered on a motion to dismiss)[1] specifically states that Bancorp's capital

4    contributions to the Bank were "consistent with OTS's . . . longstanding practice of requiring

5    holding companies to serve as sources of financial support for their FDIC-insured subsidiary

6    thrifts to help prevent or reduce potential losses to the deposit insurance fund."  Compl., Ex. 2,

7    at 31 of 35.  Because the capital contributions were consistent with Bancorp's regulatory

8    obligations, Plaintiff cannot viably contend that Mr. Perry acted improperly by authorizing those

9    contributions.[2]

10    In sum, all of Plaintiff's affirmative claims fail either for lack of standing and/or

11    for failure to state a claim on which relief can be granted.  Accordingly, the claims should be

12    dismissed.

13    **II.    THE COMPLAINT**

14    While the Complaint's organization is confusing, Plaintiff's claims are all based

15    on the following categories of alleged misconduct:

16    A.    Alleged Decisions Not to Pursue Opportunities to Raise Outside Capital

17    for the Bank.  The Complaint alleges that the Bank needed $3.5 billion of additional capital to

18    survive, but that Defendants "[d]isregard[ed] numerous prudent opportunities to raise capital

19    from outside investors."  E.g., id. ¶ 268(d).  Mr. Perry allegedly made the business decision not

20    to pursue such purported opportunities to avoid conveying weakness to the market.  Id. ¶¶ 51,

21    139, 154, 156, 160.  Plaintiff contends that these alleged actions violated both the fiduciary duty

22    of loyalty and good faith (Counts V, VIII), and the fiduciary duty of care (Counts IV, VII).

23    B.    Alleged Failure to Heed "Red Flags" Concerning the Mortgage Crisis.

24    The Complaint alleges that Defendants were aware of signs that the mortgage industry was in

25    

26    [1]  See, e.g., Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995).

27    [2]  On January 11, 2010, Mr. Perry and the other Defendants filed a motion to withdraw the
reference in this adversary proceeding on mandatory grounds based on the need for
interpretation of federal banking law.  See 28 U.S.C. § 157(d).

28

1    crisis, but did not take prudent measures to alter the Bank's allegedly risky business strategy

2    based on them.  *Id.* ¶¶ 186-238.  This allegedly resulted in "the demise of the Bank."  *Id.* ¶ 238.

3    Plaintiff contends that this alleged conduct likewise violated the fiduciary duty of loyalty and

4    good faith (Counts V, VIII), and the fiduciary duty of care (Counts IV, VII).

5            C.    Alleged Improper Accounting Treatment of an $18 Million Capital

6    Contribution from Bancorp to the Bank.  The Complaint alleges that Bancorp made an $18

7    million capital contribution to the Bank on May 9, 2008, but that Defendants caused the

8    contribution to be accounted for as of March 31, 2008.  *Id.* ¶¶ 53-63.  This accounting treatment

9    allegedly resulted in the Bank reporting that it was "well capitalized" as of March 31, 2008 in a

10    regulatory filing (known as a Thrift Financial Report, or "TFR") with the OTS.  *Id.* ¶ 63.  An

11    exhibit to the Complaint reflects that, after consultation with Mr. Perry and others, the OTS

12    approved the accounting treatment.  *Id.*, Ex. 2, at 6-8 of 35, 10-11 of 35, and 19-20 of 35; *see*

13    *also id.* ¶ 60.  A year later the Treasury Department's Office of Inspector General ("OIG")

14    issued a report (the "OIG Report") concluding that the OTS should not have approved the

15    accounting treatment for purposes of the Bank's TFR filing.  *See id.* ¶¶ 56, 60, and Ex. 2.  The

16    Complaint alleges that Defendants violated their duty of loyalty and good faith (Count V) and

17    their duty of care (Count IV) by virtue of their roles in the transaction.

18            D.    Alleged "Abdication" of Decision-Making Responsibilities.  Plaintiff

19    alleges that Defendants abdicated their decision-making responsibilities, in violation of their

20    fiduciary duties.  *Id.* ¶¶ 88-134, 268(a), 275(a), 287(a), 294(a).  While this claim nominally

21    includes Mr. Perry, Plaintiff's allegations in substance concern the outside directors.

22    Specifically, the Complaint alleges that the outside directors allowed Mr. Perry and other

23    officers to carry out a flawed business strategy for the Bank without proper Board supervision,

24    and did not properly oversee Mr. Perry's capital-raising efforts for the Bank.  *Id.* ¶¶ 90, 268(a).

25            E.    Alleged Improper Contributions of Capital from Bancorp to the Bank.

26    Finally, the Complaint alleges that Defendants are liable for authorizing capital contributions

27    from Bancorp to the Bank between September 2007 and May 2008.  Plaintiff contends that

28    these contributions wasted Bancorp's assets and benefited the Bank at Bancorp's expense.  *Id.*

DEFENDANT MICHAEL W. PERRY'S NOTICE OF MOTION        4
AND MOTION TO DISMISS ADVERSARY PROCEEDING;
MEMORANDUM OF POINTS AND AUTHORITIES

¶¶ 53-86, 279-83, 298-301.  Count VI alleges waste in respect of two contributions in early 2008 (*id.* ¶¶ 279-83), while Count IX focuses on two other contributions in late 2007 (*id.* ¶¶ 298-302).  The Complaint also alleges that Defendants breached the duty of loyalty and good faith (Counts V, VIII) and the duty of care (Counts IV, VII) by authorizing the contributions.  In making these allegations, Plaintiff willfully ignores the fact that the OTS memorandum <u>attached to his own Complaint</u> states that Bancorp's capital contributions to the Bank were consistent with OTS's "longstanding practice of requiring holding companies to serve as sources of financial support for their FDIC-insured subsidiary thrifts."  Compl., Ex. 2, at 31 of 35.

As explained below, the alleged misconduct described in items A-D above involves mismanagement resulting in alleged injury to <u>the Bank</u>.  Through these claims, Plaintiff seeks to recover Bancorp's lost investment in the Bank, or, in Plaintiff's words, the value of the assets that "Bancorp lost as a result of the OTS's seizure of the Bank and Bancorp's subsequent bankruptcy petition."  *E.g.*, Compl. ¶ 270.  Item E concerning the capital contributions is the only item that involves alleged direct injury to the holding company.  Those claims are not viable, however, because the alleged misconduct was consistent with Bancorp's obligation under federal banking law to serve as a source of strength for the Bank, and because Plaintiff has otherwise failed to state plausible causes of action.[3]

## III.    ARGUMENT

### A.    Plaintiff Lacks Standing to Assert the Bank Mismanagement Claims.

As a threshold matter, the Court should dismiss the Bank mismanagement claims because Plaintiff lacks standing to assert them.

Pursuant to the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), only the FDIC, as receiver for the Bank, has standing to assert direct claims for injury to the Bank or derivative claims for injury to Bancorp in its capacity as the Bank's shareholder.  FIRREA provides that the FDIC, as receiver, shall succeed to "all rights, titles,

---

[3]  Through this motion, Mr. Perry also seeks dismissal of Plaintiff's claims seeking disallowance and/or subordination of a proof of claim filed in Bancorp's bankruptcy case.  Compl. Counts I-III.

1  powers, and privileges of the insured depository institution, and of any stockholder . . . of such

2  institution with respect to the institution and the assets of the institution."  12 U.S.C. §

3  1821(d)(2)(A)(i).  Through this FIRREA provision, "Congress has transferred everything it

4  could to the FDIC," including "giving it all of the rights, powers, and privileges of the failing

5  institutions, their depositors, account holders, officers, directors, and stockholders."  *Pareto v.*

6  *FDIC*, 139 F.3d 696, 700, 701 (9th Cir. 1998); *see also id.* at 701 ("all rights and powers of a

7  stockholder of the bank to bring a derivative action [are vested] in the FDIC").

8          It follows that, under FIRREA, the derivative claim of a depository bank's

9  shareholder based on alleged injury to the depository bank must be dismissed for lack of

10  standing.  *See id.* at 700.  A shareholder's claim is derivative rather than direct if its alleged

11  injury "is incidental to or an indirect result of a direct injury to the corporation."  *Id.* at 699.  A

12  shareholder's action against directors for "allegedly delivering a fatal blow to the bank"

13  (precisely what Plaintiff alleges here) is derivative in nature because it is based on diminution of

14  the value of the shareholder's investment — not on direct injury to the shareholder itself.  *Id.* at

15  700; *see also Brandt v. Bassett (In re Southeast Banking Corp.)*, 827 F. Supp. 742, 746 (S.D.

16  Fla. 1993) (claims which "turn on acts taken by, and injury to, the Bank . . . plead classic

17  derivative claims which can only be asserted by the successor in interest to the Bank, the

18  FDIC"), *aff'd in part and rev'd in part on other grounds*, 69 F.3d 1539 (11th Cir. 1995).

19          A court recently applied FIRREA to dismiss a bankruptcy trustee's claims

20  against directors and officers of Integrity Bancshares, another bank holding company that filed

21  for bankruptcy in the wake of the collapse of the mortgage market.  *See Lubin v. Skow (In re*

22  *Integrity Bancshares)*, No. 09-1155, 2009 U.S. Dist. LEXIS 112020 (N.D. Ga. Nov. 30, 2009).

23  There, as here, the bankruptcy trustee sued officers and directors of the holding company and

24  the bank for alleged wrongful acts resulting in the demise of the bank subsidiary.  These alleged

25  acts — similar to those alleged here — included "negligently managing the Bank's operations,"

26  allowing the Bank to make "unreasonably risky and unlawful loans," and "the Debtor's

27  [allegedly inadequate] capital raising efforts on behalf of the Bank."  *Id.* at *5, *7, *14.

28

The court granted motions to dismiss filed by defendants and the FDIC for lack of standing.  The court held that the bankruptcy trustee could only assert claims "based on actions of the Defendants that caused direct harm to the Debtor that is <u>unique from harm caused to the Bank</u>."  *Id.* at *11.[4]  The court further explained that "[i]n order to have standing the Trustee must assert actions taken by Defendants that caused [the holding company debtor] <u>direct and unique harm, as opposed to harm that is derivative of harm to the Bank</u>."  *Id.* at *13; *see also id.* at *14 ("Harm caused to the Bank by Defendants likely resulted in harm to the Debtor as a shareholder of the Bank, but any such harm is secondary and predicated upon injury to the Bank.").  The court concluded that the trustee did not have standing to assert his bank mismanagement claims because they were not based on any such direct and unique harm to the holding company.  *Id.* at **13-14.[5]

The Court here should likewise dismiss Plaintiff's mismanagement claims for lack of standing.  While the Complaint recites that Defendants caused "direct harm" to Bancorp (*e.g.*, ¶¶ 8, 16), that is a mere "label[] and conclusion[]" that is not credited on a motion to dismiss.  *Integrity Bancshares*, 2009 U.S. Dist. LEXIS 112020, at **16-17, *citing Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see also id.* at *17 ("[S]imply stating that the Debtor suffered unique harm is not sufficient.").  Rather, the Court must look to Plaintiff's factual allegations.  Those allegations make it abundantly clear that, as in *Integrity Bancshares*, Plaintiff has not alleged harm to Bancorp distinct from the alleged injury to the Bank:

1.    <u>Alleged Decision Not to Pursue Outside Capital Opportunities</u>.  Plaintiff's claim that Defendants did not pursue opportunities to raise outside capital for the Bank plainly does not allege a harm to Bancorp that is separate and distinct from alleged harm to the Bank.  Specifically, the Complaint alleges that:

- "<u>[T]he Bank</u> needed to raise capital in order to survive" (¶ 112);

---

[4]  Emphasis in quotations is added unless otherwise noted.

[5] *Accord Brandt*, 827 F. Supp. at 745-46 (trustee lacked standing to assert breach of duty claims where there was "no meaningful distinction between injury suffered by the holding company and the derivative claims of mismanagement," especially because it was undisputed that the holding company's "solvency and success were 'crucially dependent'" on its bank subsidiary).

- "By early 2008, the FDIC had concluded that, <u>for the Bank</u> to survive, it needed as much as an additional $3.5 billion" (¶ 135);

- "[T]he FDIC had concluded <u>the Bank</u> needed up to $3.5 billion in capital to remain viable" (¶ 141);

- "Only after its capital needs were acute and totaling billions of dollars, did the Defendants even begin to take measures to preserve . . . the adequacy of capital <u>at the Bank</u>" (¶ 183); and

- Defendants' "ineffectual and myopic capital raising efforts [] directly caused . . . <u>the Bank's</u> capital inadequacy." (¶ 184).

Moreover, the Complaint focuses on the Defendants' alleged failure to sell interests in a company called Financial Freedom. *E.g.,* Compl. ¶¶ 118, 144, 146-47, 149, 151-54, 167, 169, 173. Financial Freedom was a wholly-owned subsidiary of <u>the Bank</u>.[6] Accordingly, the proceeds of any sale of interests in Financial Freedom would have gone directly to the Bank — not to Bancorp. This further demonstrates that Plaintiff has not alleged harm to Bancorp that is unique from the alleged injury to the Bank.

        2.    <u>Alleged Failure to Heed "Red Flags" Concerning the Mortgage Crisis</u>. Plaintiff's claim that Defendants did not heed red flags concerning the mortgage crisis similarly does not allege an injury to Bancorp unique from alleged injury to the Bank. The claim is that Defendants wrongfully caused the <u>Bank</u> to adopt and maintain a flawed business strategy and ignored red flags regarding the mortgage crisis that impacted the <u>Bank's</u> mortgage loan business. The claim relies, in part, on a February 2009 Material Loss Review performed on <u>the Bank</u> by the Treasury Department's OIG (Compl., Ex. 1).

The Complaint acknowledges, as it must, that "Bancorp's mortgage banking operations were conducted through its indirect subsidiary IndyMac Bank." Compl. ¶ 2; *see also*

---

[6] *See* IndyMac Bancorp, Inc., IndyMac Issues Stakeholder Letter (Form 8-K), at 5 (July 7, 2008) (Request for Judicial Notice, filed concurrently herewith ("RJN"), Ex. A). A company's SEC filing may be considered on a motion to dismiss claims asserted by the company. *See, e.g., Dreiling v. Am. Express Co.,* 458 F.3d 942, 946 n.2 (9th Cir. 2006); *Plevy v. Haggerty,* 38 F. Supp. 2d 816, 821 (C.D. Cal. 1998).

DEFENDANT MICHAEL W. PERRY'S NOTICE OF MOTION
AND MOTION TO DISMISS ADVERSARY PROCEEDING;
MEMORANDUM OF POINTS AND AUTHORITIES

8

1   *id.* ¶ 36 (mortgage banking operations were "rooted in the Bank").  The red flag claims in turn

2   all concern alleged failure to heed red flags regarding <u>precisely</u> those mortgage banking

3   operations.  *See, e.g., id.* ¶¶ 186-96 and App. 1 (alleging that Defendants ignored analyst reports

4   raising concerns about the mortgage banking industry); *id.* ¶¶ 197-201 (alleging that Defendants

5   ignored the poor performances of other mortgage lenders); *id.* ¶¶ 214-28 (alleging that

6   Defendants failed to act on information regarding increased non-performing assets and loan

7   defaults); *id.* ¶ 268(e) (alleging that Defendants failed "to heed and act upon red flags that

8   indicated the <u>Bank's business model</u> was not sustainable . . ."); *id.* ¶¶ 275(e), 287(d), 294(d)

9   (same); *id.* ¶ 238 (alleged failure to heed red flags and alter business strategy accordingly

10  resulted in "the demise of <u>the Bank</u>").  The alleged direct injury is thus to the Bank, with

11  Bancorp impacted only in its indirect, derivative capacity as the Bank's sole shareholder.

12          3.    <u>Alleged Improper Accounting Treatment of Capital Contribution</u>.

13  Plaintiff's claim here is also based on alleged direct injury to the Bank — not to Bancorp.  The

14  Complaint alleges that the capital contribution was accounted for "in an effort to obscure <u>the</u>

15  <u>Bank's</u> non-compliance with required Risk-Based Capital Ratios."  *Id.* ¶ 53.  The Complaint

16  states that the accounting treatment was part of a "misguided effort to delay <u>the Bank's</u>

17  inevitable failure," *id.* ¶ 54, and that Defendants' actions were "calculated to conceal the actual

18  financial condition of <u>the Bank</u>," *id.* ¶ 6.  And the Complaint asserts that as a result of the

19  accounting treatment, "<u>the Bank</u> filed an amended TFR that inaccurately reported [a] Risk-

20  Based Capital [Ratio] of 10.26% as of March 31, 2008."  *Id.* ¶ 63.

21          4.    <u>Alleged Abdication of Decision-Making Responsibilities</u>.    The

22  Complaint's allegation that the Defendants abdicated their decision-making responsibilities

23  regarding each of these matters likewise involves an alleged injury to the Bank and fails to

24  assert the requisite direct injury to Bancorp.

25                                    ********

26          In sum, Plaintiff's Bank mismanagement claims are just that: claims that

27  Defendants mismanaged <u>the Bank</u>, with the alleged result that Bancorp lost its investment in

28  that entity.  These are classic derivative claims, which Plaintiff lacks standing to assert.

**B.**    **All of Plaintiff's Affirmative Claims Must Also Be Dismissed Because the Facts Alleged in the Complaint Do Not State Plausible Causes of Action Against Mr. Perry.**

Plaintiff's affirmative claims must also be dismissed under Federal Rule of Civil Procedure 12(b)(6) (as made applicable here by Federal Rule of Bankruptcy Procedure 7012) because, regardless of standing, the Complaint simply does not allege plausible causes of action against Mr. Perry.

**1.**    **Standard of Review.**

"[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1949); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The new motion-to-dismiss standard articulated by the Supreme Court in *Twombly* and *Iqbal* marks a "significant change" from prior law "with broad-reaching implications." *Moss*, 572 F.3d at 972. A complaint can no longer survive merely if there is some set of facts that could possibly support plaintiff's claims. *Twombly*, 550 U.S. at 555. The new standard is far more exacting.

Under *Twombly* and *Iqbal*, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* A complaint does not suffice if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *id.* at 557). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 129 S. Ct. at 1950. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — that the pleader is entitled to relief.'" *Id*. A complaint must be dismissed unless it contains enough factual "heft" to state a "plausible," as opposed to merely a possible, claim. *Twombly*, 550 U.S. at 557.

As demonstrated below, all of Plaintiff's affirmative claims must be dismissed for failure to state a claim under this standard. We first address the Bank mismanagement

claims, then turn to Plaintiff's claim that Defendants are liable for authorizing capital contributions from Bancorp to the Bank.

### 2. Plaintiff's Claim That Mr. Perry Did Not Take Adequate Steps to Raise Capital for the Bank Should Be Dismissed for Failure to State a Claim.

#### a. Plaintiff Has Not Stated a Plausible Claim That Mr. Perry Breached His Fiduciary Duties.

The Complaint's rhetoric and conclusory allegations of wrongdoing notwithstanding, Plaintiff's factual allegations on the outside-capital issue amount to no more than a contention that Mr. Perry made poor business decisions in allegedly deciding not to pursue outside capital opportunities for the Bank. Making poor decisions, however, is not actionable under Delaware law.[7] Rather, a plaintiff must allege specific wrongful conduct sufficient to state either a breach of the fiduciary duty of loyalty (of which the duty of good faith is a subsidiary element); or a breach of the fiduciary duty of care. *See Stone ex rel. AmSouth Bancorp. v. Ritter*, 911 A.2d 362, 370 (Del. 2006); *see also Ash v. McCall*, No. 17132, 2000 Del. Ch. LEXIS 144, at *33 (Del. Ch. Sept. 15, 2000) ("[M]ere allegations that directors made a poor decision — absent some showing of self-dealing or suspect motivation — do[] not state a cause of action . . .."); *accord Gagliardi v. Trifoods Int'l, Inc.* 683 A.2d 1049, 1053 (Del. Ch. 1996).

Neither of these duties is implicated by Plaintiff's claim. While Plaintiff makes the conclusory allegation that Mr. Perry acted in bad faith (*i.e.*, breached the duty of good faith) with respect to capital-raising efforts, the facts alleged in the Complaint do not support such an inference. Bad faith conduct involves the intentional dereliction of duty, *e.g.*, intentionally acting against the company's best interests; violating applicable positive law; failing to carry out a known duty to act on behalf of the corporation; or consciously disregarding corporate duties.

---

[7] Bancorp is a Delaware corporation. Compl. ¶ 17. Accordingly, under the "internal affairs" doctrine, Delaware law governs whether Plaintiff has stated plausible claims of breach of fiduciary duties to the Company. *See, e.g., In re Verisign, Inc. Derivative Litig.*, 531 F. Supp. 2d 1173, 1214-15 (N.D. Cal. 2007); *In re USA Detergents, Inc.*, No. 09-50100, 2009 U.S. Bankr. LEXIS 3305, at *12 (Bankr. D. Del. Oct. 16, 2009).

DEFENDANT MICHAEL W. PERRY'S NOTICE OF MOTION
AND MOTION TO DISMISS ADVERSARY PROCEEDING;
MEMORANDUM OF POINTS AND AUTHORITIES

11

*See, e.g.*, *In re Walt Disney Co. Derivative Litig.*, 906 A.2d 27, 63 (Del. 2006). It is "not simply bad judgment or negligence, but rather . . . the conscious doing of a wrong because of dishonest purpose or moral obliquity; it is different from the negative idea of negligence in that it contemplates a state of mind affirmatively operating with furtive design or ill will." *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II, L.P.*, 624 A.2d 1199, 1208 n.16 (Del. 1993).

The Complaint alleges no facts suggesting any such intentional dereliction of duty or suspect motivation on Mr. Perry's part. Mr. Perry may or may not have made poor business decisions based on the facts known to him regarding capital opportunities. But that is a far cry from engaging in intentional misconduct. As the Delaware Chancery Court explained in dismissing a bad faith claim in another recent case arising out of the mortgage crisis:

> Instead of alleging facts that could demonstrate bad faith on the part of the directors . . . plaintiffs are inviting the Court to engage in the exact kind of judicial second guessing that is proscribed by the business judgment rule. In any business decision that turns out poorly there will likely be signs that one could point to and argue are evidence that the decision was wrong. Indeed, it is tempting in a case with such staggering losses for one to think that they could have made the 'right' decision if they had been in the directors' position. This temptation, however, is one of the reasons for the presumption against an objective review of business decisions by judges . . . .

*In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106, 131 (Del. Ch. 2009).

Nor has Plaintiff alleged a conflict of interest sufficient to support a claim for breach of the duty of loyalty with respect to capital-raising efforts. To state a claim for breach of loyalty based on a conflict of interest, a plaintiff must allege that the defendant was self-interested, *i.e.*, that he was on both sides of a transaction or received a benefit not received by other shareholders. *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984), *vacated on other grounds*, *Brehm v. Eisner*, 746 A.2d 244 (Del. 2000); *Collins & Aikman Corp. v. Stockman*, No. 07-265, 2009 U.S. Dist. LEXIS 43472, at *60 (D. Del. May 20, 2009).

Plaintiff has not done so here. At most, the Complaint suggests that Mr. Perry failed to pursue outside capital options in order to maintain his position at the Company and to prevent dilution of his stock ownership. Compl. ¶¶ 4, 5, 7. However, "under Delaware law,

1   simple allegations of . . . 'entrenchment motives,' without more, are insufficient to state a claim

2   that directors are financially interested." *In re Fedders N. Am., Inc.*, 405 B.R. 527, 542 (Bankr.

3   D. Del. 2009), *citing Orman v. Cullman*, 794 A.2d 5, 28-29 n.62 (Del. Ch. 2002); *accord*

4   *Gantler v. Stephens*, 965 A.2d 695, 707 (Del. 2009).

5          Moreover, any suggestion that Mr. Perry failed to take prudent steps to save

6   Bancorp and the Bank based on self-interest is simply not plausible given the Complaint's

7   acknowledgement that Mr. Perry himself was a Bancorp shareholder.  Compl. ¶ 4.  His equity

8   interest was, indeed, substantial, comprising more than three million shares of Bancorp's

9   common stock.[8]  Mr. Perry thus had a clear personal stake in preserving and maximizing the

10  Company's value.  *See, e.g.*, *In re Toys "R" Us, Inc. S'holder Litig.*, 877 A.2d 975, 1005 (Del.

11  Ch. 2005) (rejecting claim that CEO's judgment was tainted by self-interest where he was

12  heavily invested in company and thus had strong personal incentive in value maximization);

13  *accord In re Encore Computer Corp. S'holders Litig.*, No. 160444, 2000 Del. Ch. LEXIS 93, at

14  *19 (Del. Ch. June 16, 2000) (rejecting contention that director had disabling conflict of interest

15  where director "owned 4 million shares of Encore, and had a significant self-interest in

16  maximizing the value of that investment").

17         Finally, Plaintiff has not asserted a plausible claim against Mr. Perry for breach

18  of the duty of care with respect to his capital-raising efforts.  The duty of care obligates

19  corporate directors and officers to "act on an informed basis."  *Cinerama, Inc. v. Technicolor,*

20  *Inc.*, 663 A.2d 1156, 1664 n.13 (Del. 1995); *accord Collins & Aikman*, 2009 U.S. Dist. LEXIS

21  43472, at *60.  Violation of the duty requires gross negligence by defendants through "fail[ure]

22  to inform themselves fully and in a deliberate manner."   *Fedders*, 405 B.R. at 539.

23  "[C]ompliance with a director's duty of care can never appropriately be judicially determined by

24

---

25  [8]  A Bancorp proxy statement dated March 24, 2008 on which the Complaint relies (¶ 22)
    reflects that Mr. Perry beneficially owned 3,156,804 common shares as of February 29, 2008,
26  reflecting 3.9% of the Company's issued and outstanding common stock.  IndyMac Bancorp,
    Inc., Proxy Statement (Schedule 14A), at 10 (Mar. 24, 2008) (RJN, Ex. B).  A document relied
27  on in a complaint may be considered on a motion to dismiss.  *See, e.g., Marder v. Lopez*, 450
    F.3d 445, 448 (9th Cir. 2006).
28

reference to <u>the content of the board decision</u> that leads to a corporate loss . . . ."  *In re Caremark Int'l, Inc. Derivative Litig.*, 698 A.2d 959, 967-68 (Del. Ch. 1996) (emphasis in original).

The Complaint here does not allege that Mr. Perry was ill-informed or that he was insufficiently attentive to his duties.  To the contrary, it alleges that Mr. Perry dominated the Board, effectively controlled the Company, and "unilaterally decided whether potential deals were pursued."  *See, e.g.,* Compl. ¶ 113.  Despite the Complaint's rhetoric and conclusory allegations, therefore, Plaintiff questions Mr. Perry's alleged decisions regarding alleged outside capital options — not whether he was duly informed in making those decisions.  That is not an actionable claim.  *See, e.g., Caremark*, 698 A.2d at 967-68; *Alberts v. Tuft (In re Greater Southeast Cmty. Hosp. Corp. I)*, 353 B.R. 324, 343 (Bankr. D.D.C. 2006) (dismissing bankruptcy trustee's duty of care claim under Delaware law because the trustee simply "finds fault in [defendant's] failure to stop the transactions  . . . without alleging that she failed to inform herself of the consequences of her decision or overlooked critical aspects of that decision.  This amounts to a challenge to the <u>substance</u> of her decision.") (emphasis in original).[9]

### b.   Plaintiff Has Not Stated a Plausible Claim That the Alleged Conduct Proximately Caused the Bank's Loss.

Plaintiff's claim concerning efforts to raise outside capital should be dismissed for a final independent reason.  The Complaint alleges that the Bank needed up to $3.5 billion of additional capital to survive (*e.g.,* ¶ 135), but there is no allegation that capital of anything like that magnitude was available.  Accordingly, Plaintiff has not alleged a plausible link between Mr. Perry's alleged misconduct and the Bank's alleged loss.

---

[9]   Moreover, as explained in the motion to dismiss of the other Defendants, to the extent the duty-of-care claim is asserted against Mr. Perry in his capacity as a director, the claim is barred by Bancorp's certificate of incorporation. *See also* Del. Code Ann. tit. 8, § 102(b)(7); *Malpiede v. Townson*, 780 A.2d 1075, 1094-95 (Del. 2001).

The Complaint alleges that one putative investor may have been prepared to invest up to $1 billion for a fifty percent interest in Financial Freedom[10] and that another might have been willing to purchase Financial Freedom for $700 million.   Compl. ¶¶ 146, 151. Nowhere, however, does it allege that any investor or group of investors was prepared to invest anything close to the $3.5 billion that Plaintiff contends was required to sustain the Bank.

Based on the allegations of the Complaint, therefore, the Bank still would have faced a substantial capital shortfall and Bancorp still would have been rendered insolvent, even if Defendants had done exactly what Plaintiff says they should have done.  Defendants' alleged misconduct thus did not proximately cause the Bank's alleged injury.  Plaintiff has not stated a plausible claim for breach of fiduciary duty in these circumstances.  *See, e.g., Sci. of Skincare, LLC v. Phytoceuticals, Inc.*, No. 08-4470, 2009 U.S. Dist. LEXIS 58241, at *8 (C.D. Cal. July 8, 2009) (plaintiff must allege that breach of fiduciary duty proximately caused loss).

### 3.    Plaintiff's "Red Flags" Claim Should Be Dismissed for Failure to State a Claim.

Plaintiff's claim that Defendants breached their fiduciary duties by allegedly failing to heed "red flags" concerning the mortgage crisis likewise misses the mark because the alleged facts at best support an inference that Defendants made poor business decisions — not that they breached their fiduciary duties.

The Complaint alleges that Defendants ignored the following red flags concerning the mortgage market and the viability of the Bank's business model:

- Analyst reports highlighting industry risks generally and concerns about IndyMac specifically (¶¶ 186-96 and App. 1);

- Poor performances by other mortgage lenders with similar business models (¶¶ 197-201); and

---

[10]   In making the allegation that a $1 billion investment opportunity was available, Plaintiff recklessly ignores the fact that one of his own exhibits to the Complaint directly contradicts that allegation. *See* Compl., Ex. 1, at 17-18 of 84 (firm "had explored investing in IndyMac . . . but never reached a point of serious interest").

- Worsening performance by IndyMac itself, as reflected by rising losses, increased non-performing assets and loan defaults, and declining stock price for the holding company (¶¶ 214-28).

None of this states a plausible claim against Mr. Perry.  The Complaint alleges no facts that could support an inference that Mr. Perry acted in bad faith, had a conflict of interest, or was not duly informed with respect to these matters.  In substance, the claim is that Mr. Perry caused the Bank to take on undue risk by not altering its business strategy in the midst of the mortgage crisis.  That claim fails because "[i]t is well established that the mere fact that a company takes on business risk and suffers losses — even catastrophic losses — does not evidence misconduct, and without more, is not a basis for personal director liability." *Citigroup*, 964 A.2d at 130; *see also Fedders,* 405 B.R. at 541 (dismissing breach of fiduciary duty claim because "[a]t bottom, Plaintiff takes issue with the wisdom of decisions of the insiders, viewed through the prism of Fedders' subsequent collapse").

Indeed, in *Citigroup*, the Delaware Chancery Court dismissed claims against directors for alleged failure to heed "red flags" regarding the  mortgage crisis that are virtually identical to those alleged by Plaintiff here.  These red flags included:  "the steady decline of the housing market and the impact the collapsing bubble would have on mortgages and subprime backed securities since as early as 2005"; "the drastic rise in foreclosure rates starting in 2006"; "several large subprime lenders reporting substantial losses and filing for bankruptcy starting in 2006"; and "billions of dollars in losses reported by Citigroup's peers, such as Bear Stearns and Merrill Lynch."  964 A.2d at 127.  In dismissing the claims, the court explained:

> The warning signs alleged by plaintiffs are not evidence that the directors consciously disregarded their duties or otherwise acted in bad faith; at most they evidence that the directors made bad business decisions . . . . That the director defendants knew of signs of a deterioration in the subprime mortgage market, or even signs suggesting that conditions could decline further, is not sufficient to show that the directors . . . were consciously disregarding a duty somehow to prevent Citigroup from suffering losses.

*Id.* at 128; *see also id.* at 130 ("What plaintiffs are asking the Court to conclude from the presence of these 'red flags' is that the directors failed to see the extent of Citigroup's business

DEFENDANT MICHAEL W. PERRY'S NOTICE OF MOTION
AND MOTION TO DISMISS ADVERSARY PROCEEDING;
MEMORANDUM OF POINTS AND AUTHORITIES

16

1    risk and therefore made a 'wrong' business decision by allowing Citigroup to be exposed to the

2    subprime mortgage market.").

3            Likewise here, Plaintiff is asking the Court to infer from the alleged presence of

4    red flags regarding the mortgage crisis and the Bank's ultimate collapse that Defendants

5    consciously disregarded their duties.  Plaintiff's allegations, however, at most suggest that

6    Defendants may have made poor business decisions.  As in *Citigroup*, that claim fails as a

7    matter of law.[11]

8            **4.    Plaintiff's Accounting Treatment Claim Against Mr. Perry**
                 **Should Be Dismissed for Failure to State a Claim.**

9            Plaintiff's claim that Defendants caused the Bank to improperly account for an

10   $18 million capital contribution from Bancorp to the Bank also fails to state a viable cause of

11   action against Mr. Perry.

12           First, the Complaint does not allege that Mr. Perry had a conflict of interest,

13   acted from an improper motive, or was not duly informed.  It thus does not allege any of the

14   essential predicates for a breach of fiduciary duty claim under Delaware law.

15           Second, it is clear from the OIG Report that the accounting treatment in question

16   was disclosed to and approved by OTS, the agency with regulatory authority over the

17   transaction.  Compl., Ex. 2, at 6-8 of 35, 10-11 of 35, 19-20 of 35.  The OIG Report states that

18   OTS's Western Region Director approved the transaction in a phone conference with Mr. Perry

19   and others on May 9, 2008.  *See id.*, Ex. 2, at 11 of 35; *see also id.* ¶ 60.

20           While the Treasury Department's OIG did ultimately issue a report concluding

21   that the accounting treatment should not have been approved by OTS, that did not occur until a

22   year later, in May 2009.  *Id.* ¶¶ 45-47 and Ex. 2.  The fact that Mr. Perry sought and obtained

23   OTS approval for the accounting treatment at the time the transaction occurred defeats any

24

25   _____

26   [11]   Other courts have similarly rejected claims based on alleged failure to heed red flags
     concerning the recent financial crisis.  *See, e.g., La. Mun. Police Employees Ret. Sys. v. Pandit*,
27   No. 08 Civ. 7389, 2009 WL 2902587, at *8 (S.D.N.Y. Sept. 10, 2009); *In re Morgan Stanley &
     Co. Auction Rate Derivative Litig.*, No. 08 Civ. 7587, 2009 U.S. Dist. LEXIS 65166, at *5
28   (S.D.N.Y. July 22, 2009).

1    possible claim that he acted in bad faith or intentionally or recklessly violated a legal duty.  *See,*

2    *e.g., Gross v. Weingarten*, 217 F.3d 208, 216-17 (4th Cir. 2000) (regulator's pre-receivership

3    knowledge and approval of transactions by defendant bank, including backdating a $20 million

4    surplus note, was directly relevant to defendant's argument that it acted in good faith).

5         Finally, the OTS-approved accounting treatment did not affect how much capital

6    Bancorp contributed to the Bank or when the contribution occurred.   The only alleged

7    consequence is that the Bank "was able to maintain its 'well-capitalized' status, and avoid the

8    requirement in law to obtain a waiver from FDIC to accept brokered deposits."  Compl., Ex. 2,

9    at 20 of 35.  This cannot even be deemed an injury to <u>the Bank</u>, much less a direct injury to

10   Bancorp.  To the extent Plaintiff alleges that Bancorp shareholders may have been misled by the

11   Bank's reported "well capitalized" status, that would, of course, only allege an injury to those

12   shareholders, not to Bancorp or the Bank.  For this additional reason, the accounting treatment

13   claim fails.

14        **5.      Plaintiff's Abdication Claim Against Mr. Perry Should Be
                  Dismissed for Failure to State a Claim.**

15

16        Plaintiff baldly alleges that Defendants "[a]bdicat[ed] their decision-making

17   responsibilities" as officers and directors.  *E.g.*, Compl. ¶ 268(a).  The claim cannot stand

18   because the Complaint alleges no facts that could support a reasonable inference that Mr. Perry

19   abdicated his decision-making duties or failed to oversee management's activities.

20        To the contrary, as explained above, the Complaint alleges throughout that Mr.

21   Perry made the decisions and oversaw the business strategy with which Plaintiff takes issue.

22   *See, e.g., id.* ¶ 90.  The allegation against Mr. Perry is that he made poor business decisions —

23   not that he abdicated his decision-making responsibility.  Plaintiff thus fails to state a claim on

24   which relief can be granted concerning this issue.  *See Greater Southeast Cmty. Hosp. Corp. I*,

25   353 B.R. at 344 (abdication-of-responsibilities claim not properly asserted against officer who

26   made business decisions in alleged absence of proper director oversight).

27

28

6.     **Plaintiff's Claims Against Mr. Perry Based on the Capital Contributions from Bancorp to the Bank Should Be Dismissed for Failure to State a Claim.**

In addition to the Bank mismanagement claims discussed above, Plaintiff contends that Defendants engaged in corporate waste and breached their fiduciary duties by causing Bancorp to contribute hundreds of millions of dollars of capital to the Bank during the ten months preceding its collapse.  These claims regarding the capital contributions fare no better than the mismanagement claims.

a.     **The Complaint Does Not State a "Waste" Claim Regarding Bancorp's Contributions of Needed Capital to Its Wholly-Owned Bank Subsidiary.**

As an initial matter, Plaintiff offers no plausible basis for his contention that Bancorp's contributions of needed capital to the Bank constituted a waste of corporate assets. In Delaware, "corporate waste claims are subject to a stringent legal standard."  *In re Countrywide Fin. Corp. Derivative Litig.*, 554 F. Supp. 2d 1044, 1077 (C.D. Cal. 2008).  This is "an extreme test, very rarely satisfied" by a plaintiff.  *Official Comm. of Unsecured Creditors. of Integrated Health Servs., Inc. v. Elkins*, No. 20228-NC, 2004 Del. Ch. LEXIS 122, at **63-64 (Del. Ch. Aug. 24, 2004).  A waste claim will lie "only in the rare, 'unconscionable case where directors irrationally squander or give away corporate assets.'"  *Walt Disney*, 906 A.2d at 74; *accord Elkins*, 2004 Del. Ch. LEXIS 122, at *64.  If, on the facts alleged, "any reasonable person might conclude that the deal made sense, then the judicial inquiry ends."  *Harbor Fin. Partners v. Huizenga*, 751 A.2d 879, 892 (Del. Ch. 1999) (citation and internal quotation marks omitted); *see also Walt Disney*, 906 A.2d at 75 (no viable waste claim where action is attributable to a "rational business purpose"); *Zupnick v. Goizueta*, 698 A.2d 384, 387 (Del. Ch. 1997) ("[T]he waste theory represents a theoretical [concept] very rarely encountered in the world of real transactions.  There surely are cases of fraud; of unfair self dealing and, much more rarely negligence.  But rarest of all — and indeed like Nessie, possibly non existent — would be the case of disinterested business people making non fraudulent deals (non-negligently) that meet the legal standard of waste!") (citation omitted).

1    Here, the Complaint acknowledges, as it must, that Bancorp was a holding

2    company: an entity with no operations of its own, whose value lay in the operations of its bank

3    subsidiary. Compl. ¶¶ 1, 2, 35, 36; *see also* IndyMac Bancorp, Inc., Annual Shareholders Letter

4    (Form 8-K), at 7 (Feb. 12, 2008) (RJN, Ex. C) ("All of our assets and operations, except cash,

5    are held within Indymac Bank, a federally chartered thrift."). There is no dispute that Bancorp's

6    fundamental purpose was to raise and contribute capital to the Bank, or that the Bank required

7    substantial capital when the contributions at issue here were made — both to maintain capital

8    ratios mandated by the Bank's regulators and to survive as a viable entity. *E.g.*, Compl. ¶¶ 3,

9    58, 80.

10    By contributing capital to the Bank, therefore, Bancorp indisputably was sending

11    essential funds to an entity that it wholly owned, that constituted its only significant asset, and

12    on whose survival it depended. In these circumstances, there is no plausible basis for the claim

13    that the capital contributions amounted to an irrational squandering of corporate assets, lacking

14    in any viable business purpose. *See, e.g., Roselink Investors, L.L.C. v. Shenkman*, 386 F. Supp.

15    2d 209, 222 (S.D.N.Y. 2004) (applying Delaware law to reject claim that debtor's loan to cash-

16    strapped corporate affiliate lacked any rational business purpose where it was undisputed that

17    lender entity "could not survive" and "had no hope for success" without affiliated company);

18    *see also Walt Disney*, 906 A.2d at 75.

19    That the capital contributions did not constitute an irrational squandering of

20    Bancorp assets is further underscored by the fact that it is entirely routine and commonplace for

21    a parent holding company to supply needed capital to its subsidiary. As a California court

22    recently observed, "[c]apital infusions from a parent to a subsidiary are a normal, and, indeed, a

23    necessary part of the parent-subsidiary relationship. The obligation to provide adequate capital

24    begins with incorporation and is a continuing obligation thereafter during the corporation's

25    operations." *Hill v. State Farm Mut. Auto Ins. Co.*, 166 Cal. App. 4th 1438, 1494 (2008)

26    (internal citations and quotation marks omitted). For this reason, "[a parent company] will not

27    be exposed to liability . . . when [it] contributes funds to [the subsidiary] for the purpose of

28    assisting [it] in meeting its financial obligations . . .". *Id.* at 1495; *see also United States v.*

*AT&T*, 552 F. Supp. 131, 201 n.295 (D.D.C. 1982) ("A transfer of assets from a parent to a subsidiary is treated as a contribution of capital for which the subsidiary is not required to provide consideration to the parent."), *vacated on other grounds*, *U.S. v. Western Elec. Co., Inc.*, 84 F.3d 1452 (D.C. Cir. 1996).   Where, as here, the parent is a holding company whose fundamental purpose was to raise and contribute capital to its operating subsidiary, it is all the more clear that such contributions cannot be deemed an irrational squandering of assets.

The waste claim cannot stand for the additional reason that the funds contributed to the Bank were not pre-existing assets of Bancorp, but rather were raised from investors for the very purpose of making those contributions.  Bancorp SEC filings make clear that the funds were raised through the issuance of new preferred stock, common stock, and other securities.[12] Bancorp thus only had the funds in the first place because of its efforts to raise capital for the Bank.  If Defendants had decided that the Bank's situation was hopeless (which Plaintiff apparently suggests they should have done), then the capital in question would not have been raised, and the funds would not be available now to the Bancorp estate or its creditors.  There can be no viable waste claim in these circumstances.  *Cf., Elkins*, 2004 Del. Ch. LEXIS 122, at *64 (waste can occur only in context of irrational <u>exchange</u> of corporate assets).

> **b.    Plaintiff Has Not Stated a Plausible Claim That Mr. Perry Breached His Fiduciary Duties by Authorizing the Capital Contributions.**

Plaintiff's breach of fiduciary duty claims based on the capital contributions also fail.  The Complaint alleges that Mr. Perry benefited the Bank at Bancorp's expense by authorizing the contributions, thus breaching his duty of loyalty to Bancorp.  *E.g.* Compl. ¶¶ 65, 71.  As explained above, however, to assert a plausible duty of loyalty claim, Plaintiff must allege that Mr. Perry had a personal financial interest that motivated him to favor the Bank at

---

[12]  *See* IndyMac Bancorp, Inc., Fourth Quarter Review (Form 8-K), at 3 (Feb. 12, 2008) (RJN, Ex. C) ("The holding company raised a total of $176 million of common equity and trust preferred securities and contributed the proceeds to the Bank during 2007."); IndyMac Bancorp, Inc., Annual Report (Form 10-K), at 59 (Feb. 29, 2008) (RJN, Ex. D) (noting that Bancorp raised $145.6 million during the year ended December 31, 2007 through the Direct Stock Purchase Plan).

Bancorp's expense. *See, e.g., Aronson*, 473 A.2d at 812. Plaintiff has not and cannot do so. To the contrary, as a substantial Bancorp shareholder (*see* note 8, *supra*), Mr. Perry had a clear personal stake in preserving and maximizing Bancorp's value and had absolutely no interest in underlying its assets. *See Toys "R" Us*, 877 A.2d at 1005; *Encore Comp.*, 2000 Del. Ch. LEXIS 93, at *19.

Because Mr. Perry is not alleged to have had a financial interest adverse to Bancorp, Plaintiff's claim could only stand if Mr. Perry's decision to make the capital contributions was, on its face, "so far beyond the bounds of reasonable judgment that it must have been motivated by bad faith." *Roselink*, 386 F. Supp.2d at 222; *accord Lyondell Chem. Co. v. Ryan*, 970 A.2d 235, 243 (Del. 2009) (an "extreme set of facts [is] required to sustain a disloyalty claim premised on the notion that disinterested directors were intentionally disregarding their duties"); *In re Dow Chem. Co. Derivative Litig.*, No. 4349-CC, 2010 WL 66769, at *10 (Del. Ch. Jan. 11, 2010) ("Plaintiffs must show that defendants completely and 'utterly failed' to even attempt to meet their duties."). For the reasons stated above, there is no plausible basis for any such inference. The capital contributions to the Bank may or may not have been prudent business decisions, but in no event can they plausibly be deemed wholly irrational given the alignment of interests between Bancorp and the Bank. Nor has Plaintiff offered plausible grounds to infer that Mr. Perry deliberately injured Bancorp, which is the essence of a bad faith claim under Delaware law. *See Desert Equities,* 624 A.2d at 1208 n.16.[13]

### c. Bancorp's Capital Contributions to the Bank Were Consistent With Bancorp's Regulatory Obligations.

Plaintiff's claims based on Bancorp's capital contributions to the Bank also cannot withstand scrutiny because those contributions were consistent with regulatory obligations imposed on Bancorp by the OTS.

---

[13] Plaintiff makes the conclusory assertion that Mr. Perry also breached his duty of care with respect to the capital contributions, but the Complaint contains no facts suggesting that he was ill-informed in deciding to provide needed capital to the Bank. Plaintiff objects to the substance of the decision to make the capital contributions, not to the extent of the information available to Mr. Perry when he made that decision.

1    To protect the public fisc from the costs of bank failures, federal law imposes an

2    extensive regulatory framework designed to prevent financial institutions from failing.  A

3    fundamental piece of this framework is the source-of-strength doctrine referenced above.

4    The Federal Reserve Board has promulgated a regulation explicitly codifying this

5    doctrine with respect to the banks it oversees:  "A bank holding company shall serve as a source

6    of financial . . . strength to its subsidiary banks and shall not conduct its operations in an unsafe

7    or unsound manner."  12 C.F.R. § 225.4(a)(1); *see also Bd. of Governors of Fed. Reserve Sys. v.*

8    *First Lincolnwood Corp.*, 439 U.S. 234, 248 (1978).  In the thrift context, the OTS is the

9    primary regulator of both thrifts and their holding companies, and the agency has exclusive

10   authority to regulate a thrift "from its cradle to its corporate grave."  *People v. Coast Fed. Sav.*

11   *and Loan Ass'n*, 98 F. Supp. 311, 316 (S.D. Cal. 1951).  The source-of-strength doctrine is an

12   integral part of the OTS's "cradle to corporate grave" regulation.

13   The OTS relies on its comprehensive regulatory authority over various aspects of

14   thrift existence and operations to impose this source-of-strength obligation.  In 2000, the OTS

15   "describ[ed] its current approach to holding company capital."  Sav. & Loan Holding

16   Companies Notice of Significant Transactions or Activities and OTS Review of Capital

17   Adequacy, 65 Fed. Reg. 64392, 64396 (Oct. 27, 2000) (RJN, Ex. E).  The OTS stated its

18   expectation that holding companies will maintain an adequate capital cushion for the benefit of

19   their thrift subsidiaries because "[a] smaller capital cushion would . . . <u>limit the holding</u>

20   <u>company's ability to come to the aid of its subsidiary thrift</u>."  *Id*.; *see also* Gov't Accountability

21   Office, Industrial Loan Corporations: Recent Asset Growth and Commercial Interest Highlight

22   Differences in Regulatory Authority 31 (Sept. 2005) (RJN, Ex. F) ("OTS ha[s] instituted

23   standards designed to ensure that the holding company serves as a source of strength for its

24   insured depository institution subsidiaries.").

25   Congress has statutorily confirmed the authority of bank regulators, including the

26   OTS, to enforce a source-of-strength requirement on thrift holding companies.  When it enacted

27   the Gramm-Leach-Bliley Act in 1999, Congress shielded the OTS and other federal banking

28

agencies from liability for requiring a holding company to contribute capital to its insured

depository subsidiaries:

> No person may bring a claim against any Federal banking agency
> . . . for the return of assets of an affiliate or controlling
> shareholder . . . transferred to, or for the benefit of, an insured
> depository institution by such affiliate or controlling shareholder
> in connection with such transfer, if at the time of the transfer . . .
> the insured depository institution is subject to any direction issued
> in writing by a Federal banking agency to increase its capital [and
> if certain other criteria are satisfied].

12 U.S.C. § 1828(u)(1).  The House Conference Report issued in connection with the legislation

explained that the statute is intended to "enhance[] the source of strength doctrine by . . .

protecting the Federal banking agencies and the deposit insurance funds from claims brought by

the bankruptcy trustee of a depository institution holding company or other person for the return

of capital infusions."  H.R. Conf. Rep. No. 106-434, at 183 (1999) (RJN, Ex. G).

The courts have also recognized the OTS's authority to impose a source-of-

strength requirement.  In *Citizens Federal Bank v. United States*, the court evaluated whether it

would have been feasible for a thrift to engage in a transaction that "would have . . . required [it]

to upstream dividends to [its] holding company."  66 Fed. Cl. 179, 190 (2005), *aff'd*, 474 F.3d

1314 (Fed. Cir. 2007).  The court held that this "would have been anathema to the Government

regulators and to their view that holding companies should be a source of strength to their

Government-insured subsidiaries."  *Id.*; *see also id.* ("The record is clear that the OTS sought to

ensure that [the thrift's] parent was a source of strength."); *accord Resolution Trust Corp. v.*

*Tetco, Inc.*, 758 F. Supp. 1159, 1164 (W.D. Tex. 1990) (observing in context of regulatory

requirement imposed by OTS predecessor that there is an "overriding policy of guaranteeing

that holding companies will be a source of strength for their insured subsidiaries"), *vacated as*

*moot per settlement*, No. 91-5612, 1992 WL 437650, at *2 (5th Cir. 1992).

The OTS has specifically invoked the source of strength doctrine in Bancorp's

case.  As noted, an OTS memorandum attached to the Complaint specifically states that a capital

contribution at issue here was "consistent with OTS's . . . longstanding practice of requiring

holding companies to serve as sources of financial support for their FDIC-insured subsidiary

thrifts to help prevent or reduce potential losses to the deposit insurance fund."  Compl., Ex. 2,

at 31 of 35.  This memorandum leaves no doubt that the OTS imposes a source of strength obligation on thrift holding companies and regards the capital contributions by Bancorp here to have been consistent with that duty.

That the capital contributions here were consistent with the source-of-strength obligation imposed by Bancorp's principal regulator further establishes that the contributions cannot viably be deemed an irrational squandering of corporate assets and that Plaintiff thus has not stated plausible claims based on the contributions.  *Cf. Walt Disney*, 906 A.2d at 74 (rejecting waste claim where payment was made pursuant to legal obligation).[14]

## C.    Plaintiff's Subordination and Disallowance Claims Against Mr. Perry Should Be Dismissed.

Count III of the Complaint asserts that the proof of claim Mr. Perry filed in Bancorp's bankruptcy case should be equitably subordinated under 11 U.S.C. § 510(c) "based upon the inequitable conduct and multiple breaches of fiduciary duties of the Defendants as described in this Complaint."  Compl. ¶ 261; *see also id.* ¶¶ 258-60.

This Count likewise does not state a plausible claim against Mr. Perry.  The Complaint makes clear that the equitable subordination claim is wholly derivative of the claims for corporate waste and breach of fiduciary duty.  Because those claims must be dismissed for the reasons stated above, the subordination claim derived from them also cannot stand.

Count II of the Complaint seeking subordination of Mr. Perry's proof of claim under 11 U.S.C. § 510(b) should also be dismissed.  Section 510(b) provides for subordination of claims for "damages arising from the purchase or sale" of a debtor's securities or for "reimbursement or contribution" on account of such claim.  11 U.S.C. § 510(b).  Mr. Perry's

---

[14]  Moreover, even if there were a state law duty to withhold support from the Bank — and there is not — that duty would be superseded and preempted by the federal source-of-strength regime imposed by OTS.  *See, e.g., Hunter v. Philip Morris USA*, 582 F.3d 1039, 1046 (9th Cir. 2009) (state law cause of action preempted under principles of conflict preemption "where it is impossible for a private party to comply with both state and federal requirements or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress") (internal quotation marks omitted).

DEFENDANT MICHAEL W. PERRY'S NOTICE OF MOTION
AND MOTION TO DISMISS ADVERSARY PROCEEDING;
MEMORANDUM OF POINTS AND AUTHORITIES

25

proof of claim has nothing to do with his purchase or sale of Bancorp securities.  *See* Compl., Ex. 3.  Accordingly, section 510(b) is inapplicable.

Finally, Count I of the Complaint seeking disallowance of the proof of claim should be dismissed for the reasons stated in the motion to dismiss filed by the other Defendants.

**IV.        CONCLUSION**

For the foregoing reasons, the Complaint should be dismissed with prejudice.


DATED:  February 1, 2010                              Respectfully submitted,

                                                      PEITZMAN, WEG & KEMPINSKY LLP


                                                      By:    /s/ Louis E. Kempinsky
                                                             Louis E. Kempinsky

                                                      Attorneys for Defendant Michael W. Perry

| In re:  INDYMAC BANCORP, INC., A Delaware Corporation | | CHAPTER  7 |
|---|---|---|
| | Debtor(s). | CASE NUMBER: 2:08-bk-21752-BB |
| | | ADVERSARY NUMBER: 2:09-ap-02645-BB |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

**10100 Santa Monica Boulevard, Suite 1450, Los Angeles, CA  90067.**

The foregoing document described **Defendant Michael W. Perry's Notice of Motion and Motion to Dismiss Adversary Proceeding; Memorandum of Points and Authorities**, will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **February 1, 2010,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- Lee Bogdanoff      lbogdanoff@ktbslaw.com
- Matthew Heyn      mheyn@ktbslaw.com
- Louis E Kempinsky      lkempinsky@pwkllp.com
- John W Kim      jkim@nossaman.com
- Andrew L. Sandler      asandler@buckleysandler.com
- Alfred H Siegel      ahstrustee@horwathcal.com, ca51@ecfcbis.com
- John W. Spiegel      John.Spiegel@mto.com
- United States Trustee (LA)      ustpregion16.la.ecf@usdoj.gov
- D. Jean Veta      jveta@cov.com

☐  Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On **February 1, 2010**, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows: *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

**Served by U.S. Mail:**
Hon. Sheri Bluebond
United States Bankruptcy Court – Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1482
Los Angeles, CA 90012

**Served by U.S. Mail:**
United States Trustee (LA)
725 S Figueroa St., 26th Floor
Los Angeles, CA 90017

☐  Service information continued on attached page

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

| In re: INDYMAC BANCORP, INC., A Delaware Corporation | CHAPTER 7 |
|---|---|
| Debtor(s). | CASE NUMBER: 2:08-bk-21752-BB |
| | ADVERSARY NUMBER: 2:09-ap-02645-BB |

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed*

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| February 1, 2010 | Matthew M. Dryer | /s/ Matthew M. Dryer |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*

**F 9013-3.1**